EDWARD A. CARTER *vs.* BOSTON TOWBOAT COMPANY.

Suffolk.   January 20, 21, 1904. — May 17, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* Employer's liability.   *Evidence,* Opinion: Experts.

In an action against a towboat company, by an employee in charge of a wrecking lighter of the defendant having a crew of three men under him, for injuries from the breaking of a pump sling used in moving a wrecking pump from the defendant's wharf to the lighter, causing the pump to fall on the plaintiff who was on deck guiding it with his hands, there was evidence, that the sling had become weakened by rust and was not strong enough for the work, and that this should have been known to the servants of the defendant in charge of the appliances, and it did not appear that there were other slings of sufficient strength within reasonable reach of those servants, that the plaintiff believed that the sling was strong enough to hold the pump and had no reason to believe otherwise, that the plaintiff was reasonably careful in the performance of his duty in trying to turn the pump as it came over toward the lighter, that neither the plaintiff nor any of his crew had anything to do with shackling on the sling, hoisting the pump or lowering it to the deck, their duty being confined to placing it as it was lowered. *Held,* that there was evidence to go to the jury of the plaintiff's due care and of the defendant's negligence.

An analytical and consulting chemist may be allowed to testify as an expert that the upper part of a certain sling rope which he has examined has been wet with salt water and has come in contact with an iron ring which was rusted, and as to the effect which iron rust and salt water produce on a manila rope like the one examined.

TORT, against a towboat company, by an employee in charge of a wrecking lighter of the defendant having a crew of three men under him, for injuries from the breaking of a pump sling used in moving a wrecking pump from the defendant's wharf at East Boston to the lighter, causing the pump to fall on the plaintiff, who was on deck guiding it with his hands.   Writ dated April 28, 1902.

In the Superior Court the case was tried before *Fox*, J.  The material facts which the jury would have been warranted in finding upon the evidence appear in the opinion.

One George W. Miles, called as a witness by the plaintiff, testified, subject to the defendant's exception, that he was an analytical and consulting chemist and made an examination of the upper part of the sling rope on May 25, 1903.  He then was asked to state to the jury what he found there.  To this the defendant objected on the ground that it was not competent or relevant to introduce the evidence of any chemist.  The plaintiff then was recalled and testified that the rope had been kept in the pantry in his house from a day or two after the accident until a week before this trial.

The witness Miles then was recalled and the judge ruled that he might answer the question objected to, the defendant excepting.  The witness testified, that the chemical condition of the rope would be practically the same at the time of his examination as on March 1, 1902, and, subject to an exception by the defendant, testified, " that he found the rope had been wet with salt water, as it contained salt in various portions all through the rope and at its ends which came in contact with the iron ring which was rusted, which was shown up at the top by a chemical analysis ; and that iron rust is well known to rot any vegetable fibre and that chemical action will do that."  The plaintiff's counsel then picked up a piece of rope, remarking, " I notice this is one piece that has just dropped out from the rope.  Now, will you state to the jury what the effect of iron or iron rust and salt water produces upon a manila rope such as that is ? "  To this the defendant objected and on the judge's ruling that the question was admissible excepted.  The witness answered that any salt in the presence of moisture would cause iron to rust much more quickly than it would in fresh water, and that any iron forming oxide in the presence of fibre will rot the fibre.

At the close of the evidence, the defendant requested the judge to rule that upon all the evidence the plaintiff could not recover and to order a verdict for the defendant.  The judge refused to rule as requested and submitted the case to the jury.  The jury returned a verdict for the plaintiff in the sum of $6,500 ; and the defendant alleged exceptions.

The case was argued at the bar in January, 1904, before *Knowlton*, C. J., *Lathrop, Barker, Hammond, & Braley*, JJ., and afterwards was submitted on briefs to all the justices.

*J. Lowell & G. McC. Sargent*, for the defendant.

*J. J. Feely*, for the plaintiff.

HAMMOND, J. The evidence would have warranted the jury in finding that by reason of the action of iron rust and salt water some portion of the fibre of the sling had become weakened, so that the sling was not strong enough to do the work expected of it and was therefore defective; that by the exercise of reasonable care this should have been known to those persons to whom the duty of the defendant as to providing safe and proper appliances had been intrusted; that as to this particular sling the plaintiff was not such a person; that it did not sufficiently appear that within the reasonable reach of the servants there were slings of the requisite strength which might have been used in this job; that the plaintiff believed, and had no reason to believe to the contrary, that the sling was strong enough to hold the pump; that in trying to turn the pump as it came over towards the lighter of which he had charge he was in the performance of a duty; that he was reasonably careful in doing it; and that the accident was due to no negligence on his part, but solely to the breaking of the sling. Upon such findings, the jury might properly come to the conclusion that the plaintiff, while in the exercise of due care, was injured by the failure of the defendant to see that due care was exercised to provide safe and proper appliances for its workmen, and, inasmuch as the risk of a failure to perform this duty was not on the plaintiff, they could properly hold the defendant answerable for the consequences. See *Graham* v. *Badger*, 164 Mass. 42, 47; *Moynihan* v. *Hills Co.* 146 Mass. 586; *Haskell* v. *Cape Ann Anchor Works*, 178 Mass. 485, 486; *Boucher* v. *Robeson Mills*, 182 Mass. 500, 502.

The case differs materially from *Kilroy* v. *Foss*, 161 Mass. 138, upon which as to the question of due care of the plaintiff the defendant strongly relies. In that case the plaintiff was caring for the tag rope at the end of a derrick boom used to guide the descending load to its place on the ground, and had room to keep clear of the load as it was lowered on to the ground. The load consisted of stone to be used in erecting a building, and was

being unloaded from a cart by a hand derrick. It is stated in the bill of exceptions that the plaintiff testified that by means of the derrick boom and the tag rope " one would be enabled to guide the stone at a distance and stand away from it while it was suspended from the derrick boom ; that he knew these were the purposes for which the tag rope was used."

In the case at bar it was the plaintiff's duty to place the pump on the deck of the lighter as it was hoisted over the side of the wharf and lowered on to the deck by men other than his crew. The jury were warranted in finding that neither the plaintiff nor any of his crew had anything to do with shackling on the sling, hoisting the pump or lowering it on to the deck. Their duty was confined to placing it as it was lowered. One of his crew, George V. Ashland, called as a witness by the defendant, was tending the forward guy on the pump as it was lowered away to the deck, and he was told by the plaintiff not to " slack it too much."

The pump had to be turned so as to be fore and aft with the lighter as it came over the side of the lighter, " in order to lower the pump any more," and the plaintiff was turning it when " the sling broke, and he found himself underneath the pump."

The plaintiff had to put his hands on the pump. He was not tending the tag rope of a derrick boom. The wharf gang had not hitched on a guy by which the plaintiff could turn the pump. He had to take hold of the pump. There is no direct evidence that he was under the pump farther than was necessary.

The pump was coming over the side of the wharf and was being lowered on to the deck. The plaintiff was on the deck. He was necessarily lower than the pump. It does not appear that he got unnecessarily under it. " He found himself underneath it " after it fell. It may be that he was on the after end of the pump, and that Ashland had been keeping the forward guy taut and so had been keeping the pump from swinging forward, and that he slacked up and it swung aft over the plaintiff and fell on him. In the opinion of the majority of the court the questions of the due care of the plaintiff and the negligence of the defendant were properly left to the jury.

No error in law was committed in the admission of the questions put to the expert Miles and of the answers thereto.

*Exceptions overruled.*