## GIDEON THOMPSON *vs.* AMERICAN WRITING PAPER COMPANY.

Hampden.    September 27, 1904. — November 25, 1904.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Negligence*, Employer's liability.

In an action, by an experienced workman in a paper mill against his employer, for injuries from the falling of a floor of the mill across which the plaintiff was assisting in moving a heavy portion of a paper machine, called a cone pulley, it appeared, that the floor which fell was supported by cleats, and that the fastening of the cleat which gave way had become defective, the nails having been eaten away so that they did not hold, and that in the room below were tanks in which sizing was boiled, making steam which might cause the nails holding the cleats to rust and become weakened. The plaintiff testified that he knew nothing about this floor, and it did not appear that its manner of support was the usual construction of floors in the mill. *Held*, that upon this evidence a jury might find, that, even if there was no defect in the original construction of the floor, and even if the plaintiff had knowledge of the method of construction, the plaintiff had the right to assume that due care would be taken by his employer to see that the fastening of the cleat should be maintained at its original strength, and that the accident happened from the failure of the defendant to exercise such care; that the plaintiff did not assume the risk of such an accident, and, in estimating the strain to which the floor would be subjected by the movement of the heavy pulley over it, had the right to assume that due care had been used in maintaining the fastening of the cleat in proper condition. *Held*, also, that the defendant must be assumed to have known of the way in which the floor was constructed and that heavy articles were likely to be moved over it, and to have known the relative position of the sizing tanks and the cleat, and that the defendant, while it was under no obligation to the plaintiff to change the method of its floor construction, owed him the duty of using due care in seeing that the floor, including the fastening of the cleat, was kept in proper repair, it being a question for the jury whether upon the evidence the accident was attributable to a failure to use such care.

CONTRACT, at common law, by a workman in the paper mill of the defendant at Holyoke, for injuries alleged to have been caused by the negligence of the defendant, in failing to furnish the plaintiff with a reasonably safe and suitable place in which to work, and in setting him to work upon a certain floor so insecure, unsafe and dangerous, that, while the plaintiff was working there under the defendant's orders and in the exercise of due care, the floor gave way, causing the injuries alleged. Writ dated October 7, 1903.

At the trial in the Superior Court before *Maynard*, J., it appeared, that the accident happened on Sunday, April 12, 1903; that during the previous week the machinery of the mill had broken down, and the plaintiff by orders of one Griswold, the defendant's superintendent, went to the mill on Sunday morning with Griswold and four other men to attend to the repairs; that in the morning they worked about an hour or an hour and a half taking out a part of " the big paper machine " called a cone pulley, the weight and size of which are stated in the first paragraph of the opinion; that it was moved across the floor in question on a four wheeled truck, running on skids, pushed by bars and also pulled by a rope; that the cone pulley was taken to a machine shop and returned at night, and the accident happened about half past eight o'clock in the evening when the pulley was being moved back again across the same floor; that Griswold was not present at the time of the accident, having gone home about eight o'clock when they began to return the pulley, saying that he did not feel well, and telling the men " You fellows get along the best you can." The substance of the evidence in regard to the cause of the falling of the floor is stated in the opinion.

At the close of the plaintiff's evidence, the judge ruled that there was no evidence to be submitted to the jury, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*F. F. Bennett*, for the plaintiff.

*W. Hamilton*, (*W. H. Brooks* with him,) for the defendant.

HAMMOND, J. The work of removing the pulley in the morning was performed under the personal supervision of Griswold, the master mechanic of the mill, and was attended with no accident. The pulley safely passed over the very floor which gave way under its weight in the evening. It was about fourteen feet long, and weighed from one and a half to two tons. In the ceiling of the room were four eyebolts, one having been put in by Griswold that morning, and hooked to three of them, including this one, were chain falls suitable for the purpose of relieving the floor of all or a part of the weight of the pulley.

One of the grounds of the defence is that at the time of the accident the plaintiff was directing the work, and was negligent in failing to make proper use of the chain falls; and the brief of the defendant contains a detailed description of a way in which,

by a certain use of the eyebolts and falls, the strain upon the floor could have been relieved, as the defendant says, so that the pulley would have passed safely over it.   The evidence, however, as to whether the work was under the direction of the plaintiff was conflicting; and a careful examination of the evidence as to the manner in which the pulley was moved and the falls used shows that a jury would be warranted in finding that it was moved in the evening in the same manner as in the morning, except that in the evening the small end of the pulley was kept pointed towards the posts, whereas in the morning it had been kept pointing towards the arch, or in other words, both in the morning and in the evening the pulley was moved small end foremost.   Upon the whole evidence we are of opinion that the questions whether the plaintiff was in charge of the undertaking and whether the accident was attributable to a negligent failure to make proper use of the eyebolts and chain falls, or to any other negligent act in the work, are questions of fact for the jury.

It also is urged by the defendant that the danger of the work was known to the plaintiff and that he assumed the risk.   The plaintiff was a carpenter and millwright of large experience. He had been employed as such in this mill for five years, and had worked under Griswold making repairs upon floors and doing "anything round the mill [he was] ordered to do." The evidence tended to show that the floor of the room in question was constructed in the following manner.   The floor timbers all ran one way.   The floor proper consisted of three inch pine planks running transversely to the floor timbers; over these planks was laid a top flooring of one and one eighth inch hard pine, running parallel with the timbers and being "flush" with them, so that the top of the timbers was visible.   At the particular point where the floor gave way, the ends of the floor planking were supported by a cleat of two by four "plank" spiked to the side of the floor timber so as to form a flange upon which the ends rested, and to which they were spiked.   The ends of the flooring plank were not mortised into the timber, but were supported solely by this cleat.   The plaintiff testified that he knew nothing about this floor, and it did not appear that such was the usual construction of floors in the mill, or that the plaintiff ever had seen or known of any such construc-

tion in the mill. There was evidence tending to show that the fastening of the cleat had become defective, one witness who saw the state of things immediately after the accident testifying that " the nails had been eaten away so it [the cleat] didn't hold, something had eaten the nails away "; and another, that " some of these nails pulled off and some broke." The evidence tended further to show that in the room directly underneath this flooring there were several " size tanks " in which " sizing " was boiled, and that this operation " makes steam "; and it was contended by the plaintiff that by reason of this steam the spikes were subjected to a peculiar and unusual liability to rust and become weakened.

Upon this evidence a jury might find that, even if there was no defect in the original construction of the floor, and even if the plaintiff had knowledge of the method of construction, still he had the right to assume that due care would be taken by his employer to see to it that the fastening of the cleat should be held to its original strength, and that by reason of the failure to exercise such care the accident happened. Such a risk was not assumed by the plaintiff. *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282. In considering the strain to which the floor would be subjected by the movement of the pulley over it, he had the right to assume that due care had been used to see that the fastening of the cleat was in proper condition.

It cannot be said as matter of law that the evidence would not warrant a finding that the defendant was negligent. It must be assumed that the defendant knew of the way in which the floor was constructed, that heavy articles were likely to be moved over it, that the cleat was substantially the only support, and that consequently its fastening should be kept in such a condition as to bear the strain caused by the weight of such heavy articles. Moreover the defendant must be assumed to have known of the relative position of the " size tanks " and the cleat. While therefore it was under no obligation to the plaintiff to change the method of its floor construction, still it owed to him the duty to use due care to see that the floor, including the fastening of the cleat, was kept in proper repair. Whether the accident was in any way attributable to a failure to use such care is upon the evidence a question for the jury.

*Exceptions sustained.*