ALBERT PETERSON vs. MORGAN SPRING COMPANY.

Worcester.   October 3, 1905. — December 4, 1905.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* Employer's liability.

In an action by a workman against his employer for injuries received while coiling wire into a spring upon a lathe machine in the defendant's spring factory, there was evidence, that before coiling the wire the machine has to be set, in doing which a rod or bar of iron ten feet in length, called an arbor, has to be placed in the lathe, and that before it is placed in position an instrument called a guide is adjusted, the object of which is to hold the wire firmly in place while it is being coiled, that it is the duty of the person setting the machine to select and change the guide each time that the arbor is changed, and that for this purpose " guides were kept all over the place," that all these guides were old and worn and that at the time the plaintiff was injured there was no guide there which could have been used which was not old and worn, that the plaintiff never before had set a machine or had been instructed in the process and that the setting of the machine always had been done for him, that a certain man looked after the work and gave orders and had charge of the men like a foreman, inspected the work and looked after the workmen to see whether they did the work right or not, that this foreman occasionally set some of the machines and did "a little of everything," that on the day of the accident the plaintiff went to this man and said " I want somebody to set my machine " to which the foreman replied " Haven't you been here long enough to set it? You ought to be able to set your own machine," whereupon the plaintiff without further conversation returned to the lathe and attempted to set it, which took him a long time owing to his inexperience, that he selected a guide which appeared to be less worn than any of the others, placed it upon the arbor in the usual way, and began to wind a spring, that if the arbor hole in the guide is too large the arbor will shake or vibrate, and this motion being communicated to the wire will cause it to bend and slip from the set screw that holds it at the other end, that the plaintiff did not know this, and, finding that the arbor was shaking somewhat violently, tried to stop this motion by placing his right hand on top of the guide and his left hand at the outer end over the wire, that while he was in this position the wire by reason of the vibration slipped off the set screw, caught his arm and pulled it around the arbor, causing the injuries alleged. *Held,* that whether the plaintiff should have appreciated the danger and might have avoided it by due care on his part was a question of fact for the jury, that there was evidence that the defendant negligently failed to furnish suitable appliances for the plaintiff's work, and also evidence that the foreman in charge was a person whose principal duty was that of superintendence within the meaning of R. L. c. 106, § 71, cl. 2, and that the plaintiff had a right to assume from the reply of the foreman to him that there was nothing more to be said and that the foreman directly ordered him to set the machine himself.

BRALEY, J.   This is an action of tort for personal injuries received while winding wire "into a spring on a lathe machine" at the defendant's works.   The declaration contained four counts, of which the second and fourth were for defective appliances either under the statute or at common law, while the first alleged negligence of a person entrusted with superintendence, and the third charged a failure to give suitable instructions.   At the close of the plaintiff's evidence, the defendant asked the judge to give certain rulings to which we shall later refer.   The first, third and fourth requests were refused, the second given in a modified form, and the jury having returned a verdict for the plaintiff, the defendant brings the case here on exceptions to the refusal to rule as requested, and to the ruling given.

It appeared that the plaintiff before his last contract had previously worked for the defendant winding springs, and had been so employed for five months immediately preceding the accident.   During his employment he had not at any time "set a machine," or been instructed as to this process, of which he was ignorant, except so far as he might have observed the performance of this work by others.   In the winding of springs the setting of the machine had always been done for him.   Before coiling the wire into a spring the operator has to "set up the machine."   This consists in placing in a horizontal lathe a round piece of iron about ten feet in length, called an arbor, one end of which fits into a chuck where it is held in place by a set screw, while the other end rests loosely in a tail piece.   Upon the arbor, before it is placed in position, an instrument called a guide is adjusted, which consists of a piece of iron about thirty inches long by three inches in width with a brace on the back at one end.   Through the brace and this end of the guide is a hole called the arbor hole in which the arbor runs.   There is a set screw on the left side of the guide facing the machine over which the wire passes while being wound.   The object of the guide is to hold the wire firmly while it is being coiled.   Both arbor and guide are changed according to the size of the wire used, and it was the duty of the person setting the machine to select and change the guide each time the arbor was changed.   For this purpose "guides were kept all over the place," but the

plaintiff testified that they were old and worn, and in selecting a guide for the arbor used by him at the time when he was injured he looked "over all there were," and "there was no guide there which could have been used that was not worn." If the arbor hole in the guide was too large the arbor would shake or vibrate, and this motion being communicated to the wire would cause it to bend and slip from the set screw. If this occurred there was danger of the wire coming in contact with the person of the operator.

There was evidence that one Foley "looked after the work and gave out orders," and had "charge of the men the same as a foreman." He also "inspected the work and looked after the workmen to see whether they did the work right or not."

On the morning of the day of the accident, the plaintiff went to Foley and said "I want somebody to set my machine." To this request Foley replied, "Haven't you been here long enough to set it? You ought to be able to set your own machine." Whereupon, without further conversation, the plaintiff returned to the lathe which he was running and attempted to perform this part of the work. The evidence shows that it took him four hours in the morning and two and one half hours in the afternoon to set the machine, though it could be set in fifteen or twenty minutes by an experienced workman.

Upon selecting a guide which appeared to be less worn than any of the others he placed it upon the arbor in the usual way and began to wind a spring. Finding that the arbor was shaking somewhat violently, he endeavored to stop this motion by placing his right hand on top of the guide and his left hand at the outer end over the wire. While in this position, by reason of the vibration, the wire slipped off the set screw, caught his arm, and pulled it around the arbor. His testimony was to the effect that he was not aware this attempt might be dangerous, or that the trembling of the arbor indicated that the guide was too large.

How far his previous knowledge of the general running of the lathe, and observation of its proper setting by others, should affect his conduct upon this occasion was a question of fact. In view of his evidence, and of the mechanical skill required to adjust the arbor and guide, it could not be said as matter of law

that his experience was sufficient to make it plain that when he took the position at the time his arm was caught he should have appreciated the danger, and might have avoided it by due care on his part.

The weight to be given to the testimony is not before us, and the only question for our determination is whether the evidence of the plaintiff and his witnesses is sufficient to support a verdict in his favor upon any of the counts.

Although one of the witnesses testified that guides from which a suitable selection could have been made were furnished, yet according to the plaintiff's evidence all the guides were more or less worn and unsuitable.  If this was found to be the fact, then the defendant had failed to furnish proper tools, and the fourth request that " there is no evidence that the defendant negligently failed to supply suitable appliances for the prosecution of the work by the plaintiff," was rightly refused.

If Foley occasionally set some of the machines, or according to one witness "did a little of everything," there was evidence from which it could have been found that he did not perform continuous manual labor and that his principal duty was that of superintendence, and the third request that " upon all the evidence Foley was not the superintendent within the meaning of R. L. c. 106, § 71, known as the employers' liability act," was properly denied.  *Malcolm* v. *Fuller*, 152 Mass. 160.  *Cashman* v. *Chase*, 156 Mass. 342.  *Davis* v. *New York, New Haven, & Hartford Railroad*, 159 Mass. 532.

The defendant's second request that " if the plaintiff did not know how to set up the machine and he did so after the talk with Foley, he assumed the risk following any improper setting up of the machine " could not have been given, as the language used by Foley was susceptible of more than one interpretation.

And it follows that the modified instruction given, after repeating the request, that " two inferences might be drawn . . . as you see fit to draw them, one that when Peterson went away saying no more, he impliedly said to Foley ' Yes, I do, and I will do it,' the other one being, he assumed from the conduct of Mr. Foley that nothing more was to be said about it and he assumed from Mr. Foley's conduct he ordered him directly

to do it — you may draw whichever inference you please," was correct.

The first ruling requested that "on all the evidence and pleadings the plaintiff cannot recover. The verdict must be for the defendant," also was inappropriate, and could not be given for reasons already stated.

We have thus considered the various questions presented by the defendant, and finding no error of law the exceptions must be overruled.

*So ordered.*

*H. Parker*, *C. C. Milton & D. F. Gay*, for the defendant.
*V. E. Runo*, for the plaintiff.