ELIZA CAHILL *vs.* NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY.

Essex.   November 8, 1906. — January 2, 1907.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Negligence.   Telephone Company.   Electricity.*

A woman, who is employed by a telephone company as a toll operator at its telephone exchange in a city, assumes the ordinary risks of nervous annoyance and irritation reasonably connected with the performance of her duties, but does not assume the risk of a shock from an electric current which produces bodily prostration.

In an action by a telephone operator against her employer for personal injuries from a severe shock of electricity, if the plaintiff introduces evidence of a defect in the apparatus of which the defendant knew or in the exercise of due diligence ought to have known, so that it might be found that the shock was caused either by a want of repair or a lack of proper adjustment of the different parts, the question of the defendant's negligence is for the jury.

In an action at common law by a telephone operator against her employer for personal injuries from a severe shock of electricity, there was evidence that the plaintiff was employed as a toll operator at the defendant's telephone exchange in a city, that on the night before and during the morning of the day of the accident the plaintiff had reported to the chief operator that while at work at a certain switchboard she had received at times sensations not before noticed, although she previously had used this switchboard a part of every day for at least a week, and that these sensations, while not producing a shock, caused a "jarring and a grinding or rumbling in the ear" which at times caused her head to ache, that at the time of the accident she was sitting in front of this switchboard attending to calls, that, upon receiving a call in which she heard the subscriber state the place with which he wished to be connected, there followed a sensation of "shocking and grinding" and then her head began to ache, her side hurt her, her arms "kind of tightening," and she partly lost consciousness. There also was evidence that for some time before the accident there had been complaints from the plaintiff and other employees to the persons in charge that this switchboard, or the system controlling the electric current, was not working properly, and that the persons in charge had made attempts to find out and remedy the difficulty. *Held,* that the jury could have found that the accident was of such a nature that it could not have occurred

unless the defendant had permitted the apparatus to become defective, and that the question of the defendant's negligence was for the jury; *also,* that the question, whether the plaintiff by continuing to use the switchboard, after she had reason to apprehend that something was wrong in the mechanism and had reported the previous disturbances to those who had been placed in charge by the defendant, assumed the risk of any subsequent injury, was for the jury.

BRALEY, J.  This is an action of tort for personal injuries received by the plaintiff while at work in the employment of the defendant as a toll operator at its telephone exchange in the city of Lynn.  In the Superior Court at the close of the evidence for the plaintiff, at the request of the defendant, a verdict was directed in its favor, and the case is before us on the plaintiff's exceptions to the ruling.

The notice required by R. L. c. 106, § 75, not having been given, the count under the statute was waived, and the case went to trial on the counts at common law.  These in substance alleged that the defendant negligently failed to furnish a safe and suitable place in which the plaintiff could perform her work, and also had failed to maintain its wires, appliances and apparatus in proper condition, and carelessly had allowed them to become defective, whereby the plaintiff while in the performance of her service was injured by receiving a severe shock of electricity.  The questions for decision are whether there was evidence of the defendant's negligence, and of the plaintiff's due care, requiring the submission of the case to the jury.

The testimony, which is reported at length, shows that the office used as an exchange was furnished with the usual equipment of wires, transmitters and switchboards, and that under normal conditions neither the instrumentalities nor the place where they were installed and used were unsafe.  But, being charged with electricity, if either the installation or insulation was defective then upon the wires or the transmitters becoming overloaded the use of the apparatus might be rendered dangerous to the operator.  By entering the defendant's employment the plaintiff assumed the ordinary risks of nervous annoyance and irritation that reasonably might be connected with the performance of her duties, but this did not include shocks from an electric current which could be found to have caused pronounced bodily prostration, even if the degree of voltage was not sufficiently high to imperil life.

There was evidence that on the night before and during the morning of the day of the accident the plaintiff had reported to the chief operator that while at work on the sixth switchboard she had received at times sensations not before noticed, although she previously had used this switchboard a part of every day for at least a week, and that these sensations while not producing a shock caused " a jarring and a grinding or rumbling in the ear " which at times caused her head to ache.   While at work she sat in front of this switchboard attending to calls for the connection of local subscribers with places out of town, and wore upon her head, held in place by a steel spring, a light telephone receiver connected with the switchboard by a cord.   Upon receiving a call in which she heard the subscriber state the place with which he wished to be connected there followed, according to her testimony, a sensation of " shocking and grinding . . . and then my head commenced to ache and then my side hurt me and then my arms, kind of tightening."   In response to the question " Did you lose consciousness then," she replied " Well, I don't think I did wholly."   It appeared from the testimony of one of the defendant's chief operators that if complaints were received that shocks of more or less severity were experienced by employees it was his duty to examine into the cause, and remove the difficulty if it could be done, or if not to " report the trouble to headquarters."   Notwithstanding there was evidence that disagreeable and annoying noises from the clicking, ringing or buzzing of the apparatus as well as slight shocks were neither uncommon nor dangerous, none of the witnesses testified that these occurrences included the passing of a current of the force described, and it could have been found that the shock received by the plaintiff was not only unusual in severity, but dangerous, and would not have taken place if the apparatus had not been defective.   *Doyle* v. *Boston & Albany Railroad,* 145 Mass. 386, 388.   *Griffin* v. *Boston & Albany Railroad,* 148 Mass. 143.   *Graham* v. *Badger,* 164 Mass. 42.   *Carter* v. *Boston Towboat Co.* 185 Mass. 496, 498.   *Manning* v. *West End Street Railway,* 166 Mass. 230, 231. *Melvin* v. *Pennsylvania Steel Co.* 180 Mass. 196.   *Wadsworth* v. *Boston Elevated Railway,* 182 Mass. 572, 574.   For some time before the accident there had been complaints from the plaintiff and other employees to the principal operators that this switch-

board, or the system controlling the electric current, was not working properly, and attempts had been made by them to find and remedy the difficulty. The making of occasional repairs and replacements required by the daily use and wear of the system could be delegated to servants, but it was the duty of the defendant not only to provide suitable apparatus, but thereafter to maintain it in a state of proper repair so that it could be operated safely. *Rogers* v. *Ludlow Manuf. Co.* 144 Mass. 198, 204. *Moynihan* v. *Hills Co.* 146 Mass. 586, 591. *Ellis* v. *Thayer*, 183 Mass. 309, 311. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580, 582. A failure to perform this duty shown by the defective condition described, would be evidence of negligence, and beyond proof of a defect existing in the apparatus of which the defendant knew, or in the exercise of due diligence ought to have known, the plaintiff was not required to go. If the shock was caused either by a want of repair or of a proper adjustment of the different parts the question of the defendant's negligence was for the jury to determine. *Mooney* v. *Connecticut River Lumber Co.* 154 Mass. 407, 409. *Lemey* v. *Boston & Maine Railroad*, 167 Mass. 254, 257, 258. *Melvin* v. *Pennsylvania Steel Co., ubi supra. Droney* v. *Doherty*, 186 Mass. 205, 207. *Mehan* v. *Lowell Electric Light Co.* 192 Mass. 53.

The argument of the defendant that the injury might have been caused by the negligence of fellow servants, either from a failure of the chief operator, or of the switchboard inspector to perform their duty, or that of a workman who upon being directed to repair the defect had performed his work carelessly, or by some wrongful interference with the system by a stranger, is not relevant, as the defendant offered no explanation of this character concerning the accident which the jury could have found was of such a nature that it would not have occurred unless the defendant had permitted the apparatus to become defective. *Griffin* v. *Boston & Albany Railroad, ubi supra. Copithorne* v. *Hardy*, 173 Mass. 400, 401. *Pinney* v. *Hall*, 156 Mass. 225. *Hofnauer* v. *R. H. White Co.* 186 Mass. 47.

It further is contended that by continuing to use the switchboard after she had reason to apprehend that something was wrong in the mechanism the plaintiff assumed by her conduct the risk of any subsequent injury. If after reporting the pre-

vious disturbances to those who had been placed by the defendant in charge she continued at work, the question whether she knew and appreciated the danger was for the jury. *Wagner* v. *Boston Elevated Railway,* 188 Mass. 437, 441. *Peterson* v. *Morgan Spring Co.* 189 Mass. 576, 579. *Moylon* v. *D. S. McDonald Co.* 188 Mass. 499. *Finnegan* v. *Wilson Skate Manuf. Co.,* *ubi supra.* *Urquhart* v. *Smith & Anthony Co.* 192 Mass. 257.

*Exceptions sustained.*

*R. L. Sisk,* for the plaintiff.

*H. W. Dunn,* (*C. H. Walker* with him,) for the defendant.