EMIL CORMO *vs.* BOSTON BRIDGE WORKS.

Suffolk.   January 11, 1910. — March 1, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Negligence*, Employer's liability.   *Conflict of Laws.*   *Evidence*, Foreign law, Presumptions and burden of proof.

In an action of tort by an employee against his employer to recover for personal injuries received while the plaintiff was at work for the defendant in another State, the declaration contained counts under R. L. c. 106, § 71, and a count at common law. The defendant did not raise the objection that the defendant's liability should be determined by the law of the place of the accident but was content to rest his liability upon both the common and the statutory law of this Commonwealth. No evidence, therefore, of the law of the State where the injury to the plaintiff was received was introduced, but it was said that, in the absence of evidence to the contrary, the common law of the place of the accident would be presumed to be the same as that of this Commonwealth, although such presumption would not arise as to the statutory law of the other State.

In an action by an employee against his employer, a bridge building corporation, the declaration contained a count at common law alleging a negligent failure of the defendant to provide the plaintiff with safe and proper tools and appliances to use in his work. At the trial there was evidence tending to show that the plaintiff was at work with three fellow employees in hammering iron rivets into an iron bridge by the use of a pneumatic hammer, that when in its proper condition the piston of the hammer would remain at rest unless a trigger upon it was pressed, that a pneumatic hammer requires frequent cleaning in order to keep particles of dust from getting under the valve and setting the piston in motion without the trigger being pressed, that, also, the hammer should be inspected frequently because a spring which keeps the trigger up and the valve closed is likely to become weak and to cause a leaking which would put the piston in motion. There was further evidence tending to show that the hammer had not

been cleaned or inspected for a considerable period before the accident, and that, previous to the accident, the hammer, when not in use but lying on the ground, had been seen to move and twist, but there was no evidence that the plaintiff understood the inner mechanism of the hammer or was qualified to or did attach any significance to such fact. There also was evidence that, while a fellow workman of the plaintiff was holding the hammer and when there was no pressure on the trigger, the piston suddenly started and struck and destroyed the plaintiff's eye. *Held,* that it could not be ruled as matter of law either that the plaintiff was wanting in due care or that, having anticipated what occurred, he voluntarily exposed himself to the danger; *and also,* that there was evidence from which the jury would have been warranted in finding the defendant negligent in failing to perform its common law duty of providing safe appliances for the plaintiff's use and to use due diligence in keeping those which were supplied in repair.

TORT for personal injuries received by the plaintiff while in the employ of the defendant and at work in the town of Towners in the State of New York. Writ dated July 10, 1906.

The case was tried before *Brown,* J. The facts are stated in the opinion. At the close of the evidence, it was agreed by the parties that the judge should order a verdict for the defendant and report the case to this court, the defendant to pay all the expenses of the reporting of the case, and that, if this court should say that the ruling of the judge was correct, the verdict as ordered was to stand, but if this court should say that the case should have been submitted to the jury, the case was to be sent back for assessment of damages only.

*R. H. Sherman,* for the plaintiff.

*G. W. Buck,* for the defendant.

BRALEY, J. It may be assumed from the report that the plaintiff, who was described as domiciled in this Commonwealth, was hired here by the defendant, which is stated in the writ to be a foreign corporation having its usual place of business at Boston. The accident happened in the State of New York, where the plaintiff as its servant worked, helping to rivet an iron bridge in process of construction. The first and second counts of the declaration are under R. L. c. 106, § 71, now St. 1909, c. 514, § 127, for negligence of some person entrusted with superintendence either in the direction of the work or in failing to discover or remedy the defect in the works or machinery which is alleged to have caused the injury; while the third count is at common law for failure to provide proper appliances

and tools with which the plaintiff was to perform his work. At the trial no proof was offered of the foreign law, but the defendant apparently was content to rest its liability upon our law, both common and statutory, relating to its negligence and the plaintiff's due care or assumption of risk upon the issues raised by the pleadings. The action, however, being transitory, the defendant could be sued wherever found, and it is to be presumed in absence of evidence to the contrary that the common law of the place of the accident is the same upon the questions presented as our own, although this presumption does not arise as to the statutory law of a sister State. *Callender, McAuslan & Troup Co.* v. *Flint,* 187 Mass. 104. *Cherry* v. *Sprague,* 187 Mass. 113.

While building the bridge, the defendant established a compressed air plant in the vicinity to operate the pneumatic machines or hammers used to head the rivets after they had been heated and placed in position. The air from the compressor was transmitted through a metal pipe, which was connected with the hammer by a detachable rubber or cotton hose. In the cylinder, or barrel, is placed a detached, movable piston of steel about an inch in diameter and four inches in length; when the hammer is used, the air, which is admitted or shut off by means of a lever or trigger in the handle controlled by the operator, forces the piston against the rivet on which a movable cap is placed, hammering and forming the end into a head. The plaintiff, as one of a gang of four men, used one of the hammers in riveting bolts. They worked in pairs, each taking his turn in holding and operating the hammer, while the other inserted the rivets. Of the remaining two one held the rivet in place by a dolly-bar, as the head was being formed, while the fourth heated the rivets at a portable forge. It was not controverted that when the air was turned off by use of the trigger, the hammer or piston, if the machine was in proper working order, would be at rest, and there should be no danger from contact with it; but if the trigger was pressed or air was admitted, unless the hammer was in juxtaposition with the rivet, the piston would be ejected with much force.

At the time of the accident, according to testimony of the plaintiff and his witness, the machine was held by a fellow

servant with his hand underneath but not near the trigger, when the piston suddenly started, struck and destroyed the plaintiff's eye. A hammer properly constructed and in repair, after the air pressure had been turned off, would move only as the trigger was pressed, and unless some satisfactory explanation was offered by the defendant, the jury upon this evidence could find that it had become defective. *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188, 191. *Silverman* v. *Carr*, 200 Mass. 396.

It further appeared that previously when the hammer was not in use, but was lying on the ground, it had been observed to move or twist. The plaintiff moreover contended, and introduced evidence from which the jury could find, that a pneumatic hammer requires frequent cleaning, for if particles of dust get under the valve, which opens and closes by a spring moved by the use of the trigger, the valve does not entirely close when the trigger is released and the air which passes will set the hammer in motion; or, if the spring loses its elasticity from long use and space is left at the valve stem, causing it to drop down, a similar action follows. In the opinion of the plaintiff's expert a frequent examination would be necessary to ascertain whether the spring had become weak, or to discover and remove any particles of dirt which might have accumulated under or around the valve. It was admitted by Light, who testified as a witness for the defendant and who, the jury could find, was acting as the defendant's representative and among other duties had charge of the supervision of the hammers, that for a considerable period preceding the accident they had not been inspected or cleaned. Upon this evidence, in view of the nature of the agency used and the dangers which obviously might exist if the spring became impaired or the valve clogged from particles of dust arising from the manner of doing the work, and the action of the hammer at the time of the accident, it was a question of fact whether the plaintiff's injury could have been avoided if the hammer had been examined or inspected, especially when the evidence already referred to showed that with the air pressure turned on and the trigger at rest, the hammer had been seen to move when not in use. The defendant, in the prosecution of the work, was required not only to provide reasonably safe ap-

pliances for the plaintiff's use, but by the exercise of reasonable diligence to see that they were kept in repair. A failure to perform this duty furnished evidence of its negligence at common law. *Rogers* v. *Ludlow Manuf. Co.* 144 Mass. 198. *Peterson* v. *Morgan Spring Co.* 189 Mass. 576. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580. *Ruddy* v. *George F. Blake Manuf. Co., ante,* 172.

The defendant, however, contends that the plaintiff was negligent and assumed the risk. If the plaintiff knew that occasionally as it lay on the ground, with the air turned on at the compressor, the hammer would move, he is not shown to have been possessed of any knowledge of the interior mechanism of the valve or spring, or of any information from which he should have known that when held by his fellow workmen it might operate without the trigger being pressed. It could not be correctly ruled as matter of law that by continuing to work with the hammer he was careless, or must be held to have anticipated what occurred, and voluntarily exposed himself to a danger which resulted in severe bodily injury. *Moylon* v. *D. S. McDonald Co.* 188 Mass. 499. *Arnold* v. *Harrington Cutlery Co.* 189 Mass. 547. *Cahill* v. *New England Telephone & Telegraph Co.* 193 Mass. 415. *Jellow* v. *Fore River Ship Building Co.* 201 Mass. 464.

The weight of the evidence or what conclusion should be reached or inferences drawn from conflicting testimony are not before us, but these considerations were solely for the jury under appropriate instructions. It being evident that the plaintiff was entitled to go to the jury upon the count at common law, the other counts need not be considered. By the terms of the report, the verdict is to be set aside and the case is to stand for trial for the assessment of damages only.

*So ordered.*