MARGARET MORLEY *vs.* UNION COTTON MANUFACTURING
COMPANY.

Bristol.   October 23, 1911. — November 29, 1911.

Present: RUGG, C. J., HAMMOND, BRALEY, & DeCOURCY, JJ.

*Negligence,* Employer's liability.

In an action by a weaver in a cotton mill against her employer for personal inju-
ries caused by the plaintiff stepping in a hole or depression in the floor of a dark
passage back of the looms tended by the plaintiff, through which she had occa-
sion to pass in oiling the looms, if it appears that the depression was about five
by six inches and about an inch deep in the centre with a ragged edge all around
it and that it had been allowed to remain in practically the same condition for
about two years, although it had been known during the whole of that time to
the defendant's " second hand " in charge of the room, there is evidence of a de-
fective and dangerous condition of the floor which the defendant by the exercise
of due diligence should have remedied.

A weaver in a cotton mill does not assume as a condition of her employment the
risk of injury from a depression in the floor of a dark passage, back of the looms
which she tends, through which she has to pass in oiling them, if the depression,
which is about five by six inches and about an inch deep in the centre with a
ragged edge all around it, is nearly filled with cotton waste dark and discolored
like the rest of the floor so that it would not be noticed without a careful in-
spection, and she has not seen the depression or been told of its existence.

TORT for personal injuries sustained by the plaintiff on Au-
gust 2, 1909, while at work as a weaver in the defendant's cot-
ton mill at Fall River.   Writ dated August 21, 1909.

In the Superior Court the case was tried before *Wait,* J.   It
appeared that the plaintiff's injuries were caused by her foot slip-
ping in a hole or depression in the floor of an alley back of the
eight looms operated by the plaintiff, into which she had gone
for the purpose of oiling the looms, that she had oiled one of
the looms and, as she was going to oil the next one and had the
oil can in her hand, her foot slipped " as if something gave way
under " it, and she fell.   She described the hole as " all ragged "
and as being about as large as her hand, and testified that it
was dark there and that she never had seen the hole before.
Another witness described the hole as being about as large as her
hand and testified that it was dark and looked like wood that had
been decayed and rotted.

One Keefe, a witness called by the defendant, whose testimony

is referred to in the opinion, testified that he was at the time of the trial an overseer in the defendant's mill, but that at the time of the accident he was "second hand;" that he hired the plaintiff; that she came to work on June 10; and that on June 18 she began work on the looms where she was hurt and worked on them up to the time of the accident; that he first saw the depression in the floor where the plaintiff was hurt about "four years ago"* and that it had been there practically in the same condition up to the time of the accident; that it first appeared to be about five by six inches; that it was as deep as the floor was thick, about an inch in the centre, and had a ragged edge all around; that it was situated five inches out from the bottom of the loom, and about six inches back from the alley; that he saw it after the plaintiff was hurt, and that it remained there until the section of the floor [which was used at the trial] was cut out in January, 1911.

On cross-examination he testified that the hole or depression was dark and discolored; that he went by it through that alley about four times a day; that he could not say whether he noticed the hole as he went by there a week before the plaintiff was hurt, although he knew that it was there; that he could not say that he noticed it in any of the three previous weeks; that it was not a thing that you would notice easily.   "Q.  It was hard to see it, hard to discover it?   A.  If you got down, looked down at the floor you would notice, but if you were walking along the alley you wouldn't notice. — Q.  It wasn't a thing that would attract your attention as you stood in the alley?   A.  Not unless your attention was drawn to that spot.  If you were looking down you would see it. — Q.  Then you saw a place discolored very much like the floor that was there?   A.  You could notice the hole there, the depression. — Q.  And it was very much discolored like the rest of the floor, that is right, isn't it, Mr. Keefe?   A.  Yes. — Q.  A part of it was filled up with this soft filling?   A.  Yes. — Q.  A greater part of it was filled up with this soft filling, wasn't it?   A.  Yes. — Q.  How much of it wasn't filled with that filling?   A.  Well, I couldn't say how much wasn't.  It was pretty well filled up with waste."

---

* The trial was in 1911, the exceptions being allowed on July 22 of that year.

At the close of the evidence the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*C. R. Cummings,* (*J. W. Nugent* with him,) for the plaintiff.

*D. F. Slade,* for the defendant.

BRALEY, J.   The jury from the testimony of the defendant's "second hand," who hired the plaintiff, could have found, that the hole or depression which had been in existence four years before the accident, by reason of its length, width, and depth, with a ragged edge, caused the floor to be defective and dangerous, either at common law or under the statute, and that the defendant by the exercise of due diligence should have known of and remedied the defect. *Huddleston* v. *Lowell Machine Shop,* 106 Mass. 282. *Foster* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 21. *Thompson* v. *American Writing Paper Co.* 187 Mass. 93.

It is said by the defendant that the plaintiff assumed the risk of injury from these conditions. But, while she accepted obvious dangers incident to her employment, the jury upon conflicting evidence would have been warranted in finding that the accompanying circumstances as to location, light and accumulation of waste material in the hole were sufficient to prevent its discovery without careful inspection. If they so determined, the defect was either wholly or partially concealed, and the plaintiff did not undertake to relieve the defendant from liability. *Crimmins* v. *Booth,* 202 Mass. 17, 22.

The case at bar is distinguishable from *Gleason* v. *Smith,* 172 Mass. 50, and kindred cases where from actual observation or from common experience and knowledge the construction of a machine, or the projections of parts of the mechanical equipment, or a floor with uncovered openings or uneven surface, having been plainly visible, the employee was held to have assumed the risks of the business as conducted by the defendant. *Goodridge* v. *Washington Mills Co.* 160 Mass. 234. *Nealand* v. *Lynn & Boston Railroad,* 173 Mass. 42. *McCafferty* v. *Lewando's French Dyeing & Cleansing Co.* 194 Mass. 412. *Connolly* v. *Furbush,* 201 Mass. 271. The plaintiff in her testimony stated, that she never had observed or been informed of the depression, and that when injured she was necessarily passing over it in the usual performance of her work. The obligation of the defendant to provide a reason-

ably safe place or ways and works where this duty of service could be discharged afforded a presumption on which the plaintiff could rely, that there were no unseen dangers which might lead to bodily harm. If she still was required to take ordinary precautions, and could not disregard exposed conditions clearly perceptible, yet in view of her further evidence, that the place was not well lighted, the effect to be given to her previous opportunities for observation, while important, was for the consideration of the jury, to whom the question of the plaintiff's due care as well as of the defendant's negligence should have been submitted. *Peterson* v. *Morgan Spring Co.* 189 Mass. 576. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580.

*Exceptions sustained.*