GUY BROGNA *vs.* MICHAEL CAPODILUPO.

GAETANO FIERIMONTE *vs.* SAME.

Middlesex. May 11, 1932. — June 28, 1932.

Present: RUGG, C.J., WAIT, FIELD, & DONAHUE, JJ.

*Negligence,* Of person owning or controlling real estate.

Where, at the trial of an action of tort by an employee of an independent contractor engaged in painting a house against the owner of the house for personal injuries sustained by reason of a fall of staging due to a dangerous and unsafe condition of a gutter to which the staging was attached, there was evidence that the defect in the gutter was not obvious, but there was no evidence either that the defendant

knew of the method by which the gutter was affixed to the house or that there was a dangerous condition at the section of the gutter which was torn away from the house at the time of the accident; and it appeared that the staging was attached to the gutter and was tested by the plaintiff's employer before it was used, and there was no evidence that the defendant had anything to do with the choice by the plaintiff's employer of the method he used in supporting his staging or saw the staging supported from the gutter as it was before the accident or was familiar with the way such stagings ordinarily were supported, a verdict should have been ordered for the defendant.

TWO ACTIONS OF TORT. Writs dated July 20, 1928.

In the Superior Court the actions were tried together before *Beaudreau,* J. Material evidence is stated in the opinion. There were verdicts for the plaintiffs, respectively, in the sums of $3,250 and $1,300. The defendant alleged exceptions.

*G. B. Rowell,* (*J. H. Lowell* with him,) for the defendant.

*E. F. Flynn,* for the plaintiffs, submitted a brief.

DONAHUE, J. The plaintiff in each case was a painter in the employ of an independent contractor who had a contract to paint three new houses for the defendant. The plaintiffs fell from a staging on one of the defendant's houses on which they were at work and received injuries. The declarations base the asserted right of the plaintiffs to recover on negligence of the defendant in failing to warn them of an alleged dangerous and unsafe condition of the gutter from which the staging was suspended. There was a verdict for each plaintiff. A consolidated bill of exceptions presents for our consideration the defendant's exceptions taken in each case to the exclusion of certain evidence, to the denial of certain of the defendant's requests for rulings, to certain portions of the charge and to the refusal of the trial judge to allow the defendant's written motions for the direction of verdicts for the defendant.

In the following summary of the evidence where the testimony was conflicting the version most favorable to the plaintiffs has been taken.

The staging was about forty-five feet long and had been placed on the side of the defendant's house a few days before July 20, 1925, on the morning of which day the

plaintiff Brogna and another painter were on the staging and the plaintiff Fierimonte had just stepped upon it when the boards constituting the floor of the staging separated and the two plaintiffs were thrown to the ground. The staging was supported by four sets of ropes or falls running to four hooks about ten feet apart which rested on pieces of wood placed in the gutter at the eaves of the house. It could be raised and lowered and put at such height as the painters using it desired by means of pulleys in each of the four sets of falls. Above the part of the staging on which Fierimonte stepped was one of the four hooks, and a section of the gutter ten feet long by which that particular hook was supported was pulled away from its attachment to the house when he stepped upon the staging. There was evidence from which the jury were warranted in finding that the failure of the gutter to support that particular hook was the immediate cause of the plaintiffs' fall. A few days before the accident the staging, under the direction and supervision of the plaintiffs' employer, who had been a painter for twenty-two years, had been placed where it was when the plaintiffs fell. He owned the staging and all the appliances used in connection with it. He testified that he took the hooks and the falls up on an extension ladder, placed the four blocks of wood in the gutter and set the hooks upon them; that before doing this he looked at the gutters and gave them the usual tests and could see nothing wrong with the gutters; that when he had the staging attached he looked it over and gave it the usual observation and the usual test; that he had his men "jam it" to see if it was all right while he looked on carefully from the top, and there was nothing wrong with the staging or with the gutter. Both plaintiffs were present when the staging was first put up and the plaintiff Brogna was there when it was tested. The defendant was not present when the staging was put up and did not direct it to be done or say he wanted it to be done "one way or the other." With reference to the ten-foot piece of the gutter which the jury might find was pulled away from its attachment to the house, rather than split by the hook as the defendant's

evidence tended to prove, the plaintiffs' employer, who saw it three or four days after the accident, testified that "he saw four 8d nails in it" which he would say were two and one half inches long. He did not testify that there were not indications of more nails having been in that section of the gutter or as to what was observable with reference to the nailing of that section when he examined and tested the gutter and found it all right at the time he placed the staging on the house. There was testimony introduced by the defendant that the gutter was nailed to the house with "8d" nails two and one half inches long and "20d" nails about four inches long and that there were "20d" nails every twenty inches. The plaintiffs' employer testified that when he went up to place the hooks on the gutter he saw no moulding under the gutter, and that a moulding gives a little support to the gutter. The house was built for the defendant by an independent contractor under an agreement providing that the defendant should furnish the material and the independent contractor the labor, and that the work should be done in a good, workmanlike manner. While it was being built the defendant came to the house once in a while to see how it was going, what kind of work they were putting into it. He did not tell the carpenters how he wanted the work done or make any suggestions to them as to this house. Whatever he observed in the construction of the house was all right and was done by the carpenters to his complete satisfaction. He did not see the carpenters put up the gutters or look them over at the work. The defendant testified that he purchased the gutters new, and that they were made of fir which is good, substantial wood. The carpenter work on the outside of the house had been completed at the time of the accident. The plaintiff Brogna testified that when the staging was being tested he looked at the gutter from the ground and saw nothing obvious that would indicate a defect. The defendant offered testimony to the effect that the gutters when put up were in good condition. The plaintiff Fierimonte testified that he was a painter, that he had worked on other houses of the defendant, that he had at times

assisted the independent contractor, who was his brother, in putting up stagings and that he looked at the gutter, ropes and hooks just before getting on the staging. The plaintiff Brogna testified that he had worked at painting for the independent contractor, who was his uncle, for three or four years before the accident and had assisted in putting up stagings probably more than twenty times, and that the plaintiff Fierimonte always assisted the independent contractor in putting up stagings and had worked for, him longer than the witness had. He was asked on cross-examination whether the usual way he put up a staging. was by attaching the staging to a gutter and replied that it was according to the roof, that the house where the accident happened had a pitched roof. He was asked if the usual way was to put a board or cleat at the very pitch and he replied it was not necessary. He testified that he relied on the judgment of the man on the roof when the hooks were put up, and on the tests that were made of the staging by jumping on it and pulling it down to see if the gutter would support it; that since the accident a law had been passed prohibiting painters from attaching stagings the.way in which this one was attached.. A painter of experience testified that in the year 1925 if a staging were attached to a pitched roof boards should be used, that the custom of the trade for painters was to put a roof board from the pitch of the house down to the end and then to put a gutterhook over the roof board; that in 1925, as now, it was the custom among painters to hang stagings from gutters, "Anybody who want[s] to take the chance they can take it"; that in 1925 painters were allowed to use gutterhooks. To the question "In 1925 it was the custom of the painters, as allowed by the regulations at that time, and ordinarily done by painters, to hang staging from a gutter by a gutterhook?" he answered "Yes."

As owner of the premises where the plaintiffs were working as. employees of an independent contractor the defendant owed them the same but no greater duty than. if they had been his own employees. *Crimmins* v. *Booth*, 202 Mass. 17, 21. So far as obvious dangers were concerned he

was not obliged to improve or change his building to make the working conditions of the plaintiffs safer. *Pilling* v. *Hall*, 251 Mass. 425, 427. If there was a dangerous condition in the defendant's gutter which was obvious, he owe'd the plaintiffs no duty with reference to it. *Kelley* v. *New York Central Railroad*, 255 Mass. 124, 127. If on the other hand there was a dangerous condition in the defendant's gutter which was not obvious but was concealed, he owed the plaintiffs a certain duty, if the condition was such that the plaintiffs could not reasonably have discovered it. *Pettingill* v. *William Porter & Son, Inc.* 219 Mass. 347, 349. *Favereau* v. *Gabele*, 262 Mass. 118, 119. It was the defendant's duty to use reasonable care to discover a hidden danger of such a character and, if one were discovered, to remedy it or to give the plaintiffs notice or warning of its existence. *Gray* v. *Boston, Revere Beach & Lynn Railroad*, 261 Mass. 479. *Favereau* v. *Gabele*, 262 Mass. 118, 119. The plaintiffs' declarations allege a violation of this duty by the defendant. If it be assumed that there was a concealed danger in the defendant's gutter not discoverable upon a reasonable inspection by the plaintiffs, still the burden was on them to prove either that the defendant actually knew of the existence of the danger or that by exercising reasonable care he would have discovered it.

There was no evidence that the defendant actually knew of the method by which the gutter was affixed to the house or that there was a dangerous condition at the section of the gutter which was torn away from the house at the time of the accident. He did not see the gutters' when they were being installed by the carpenters and it does not appear that he had ever observed or been in a position to observe the manner by which they had been attached to the building. His testimony as to his being present at times while the house was under construction, as to his observations at such times and his conclusions, would not warrant a finding that he actually knew of a dangerous condition at the gutter when the plaintiffs first went to work on the building or up to the time of the accident.

There being no evidence that the defendant actually knew of a dangerous condition in the gutter, if the defendant is to be held liable it can be only because there was evidence warranting the conclusion that he failed to use the care that an owner of ordinary prudence, in the same situation as he, would have used to discover a condition of danger in the gutter. There was no evidence that the defendant had anything to do with the choice by the plaintiffs' employer of the method he used in supporting his staging rather than another and apparently safer method, or that the defendant saw the staging supported from the gutter as it was before the accident, or was familiar with the way such stagings were ordinarily supported. But if it be assumed that the testimony of the expert painter, or the portions of it most favorable to the plaintiffs, warranted a finding of a universal or uniform custom long enough established to raise a presumption of the defendant's knowledge of it (but as to this see *Bourbonnais* v. *West Boylston Manuf. Co.* 184 Mass. 250, *Barrie* v. *Quinby*, 206 Mass. 259, 265, *Coyne* v. *Byrne*, 218 Mass. 99), there is lacking evidence upon which to found a conclusion of the defendant's negligence. There was no evidence that the attention of the defendant had ever been directed to any defect, abnormality or inadequacy in the gutter which was new and attached to a new house. There was no evidence descriptive of the appearance of the gutter before the accident which furnishes any indication of a danger determinable by a reasonable inspection. The evidence of all the witnesses who testified that they observed the gutter, either from the ground or from the roof, contains nothing to warrant the inference that if the defendant had himself examined it with the care that an owner of ordinary prudence would have used in the same circumstances, he would have learned that there was a dangerous condition in the gutter. There is in the evidence nothing which suggests any reasonable test of the gutter which if made by the defendant would have been likely to disclose to him the presence of danger. No warning or sign of danger appeared when a painter of twenty-

two years' experience tested the gutter by the usual tests both before and after the staging was attached.   There is nothing to indicate that if the defendant had made the same tests the results would have been any different.   A careful examination of all the evidence as disclosed by the record fails to furnish any basis for the finding that the defendant was negligent in not discovering a dangerous condition in his gutter.

Since on the evidence the defendant neither knew nor reasonably should have known of a dangerous condition he is not liable and the defendant's motions for directed verdicts in his favor should have been allowed.   In view of the conclusion here reached the defendant's exceptions must be sustained, it is not necessary to pass upon other exceptions of the defendant, and judgment must be entered for the defendant in each case.   G. L. c. 231, § 122.

*So ordered.*