CATHERINE KEOUGH *vs*. E. M. LOEW'S, INC.

Suffolk.    January 4, 1939. — June 27, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & COX, JJ.

*Negligence*, One owning or controlling real estate, Assumption of risk.

Evidence warranted a finding that a dancer, engaged by the proprietor of a theatre for a specialty dance, did not assume the risk of an injury sustained by her in a fall caused by a small hole in the concrete floor of a dimly lighted room, assigned to her as a dressing room, when she was practising some dance steps preparatory to going on the stage.

TORT.    Writ dated November 3, 1933.

A verdict for the plaintiff in the sum of $2,000 was recorded with leave reserved before *Hurley*, J.; and he thereupon ordered a verdict entered for the defendant and reported the case.

*J. C. Johnston*, (*J. Klarfeld* with him,) for the plaintiff.

*D. L. Allison*, for the defendant.

QUA, J.    The defendant engaged the plaintiff, a dancer, "to render and produce . . . a certain dancing act or specialty" at the defendant's theatre.    Upon the plaintiff's arrival at the theatre she was assigned by the defendant to a dressing room in the basement.    The plaintiff left some articles there, went to the musicians' room for a rehearsal, returned to the dressing room, and put on her costume and "make-up."    She contends that while trying out some dance steps on the concrete floor of the dressing room preparatory to going upon the stage, in stepping backward, her heel caught in a hole in the floor, and she fell and was injured.

The evidence was conflicting, but on that most favorable to the plaintiff it could have been found that the hole was about three and one half inches across in each direction and about two inches deep, with "very ragged and jagged" sides; that it was pretty well worn, of a dirty gray color

about the same as that of the surrounding floor, and was "just a dusty hole" containing "a lot" of dust and "dirt"; that the plaintiff did not see the hole before she fell; that the lights were directly over the make-up shelves; and that the room was dimly lighted, and that part of it where the accident occurred was in shadow. The report states that there was evidence warranting a finding that the defect had existed a sufficient time for the defendant to have had notice of it by the exercise of reasonable care.

By inviting the plaintiff to its premises for business purposes the defendant assumed the duty of reasonable care to have them safe for her use, except as that duty was modified by the express or implied terms of the contract of employment. It is implied in the contract of employment that the person employed is to work upon the premises in the condition in which, if he makes a reasonable examination, the premises will appear to be, and that the employer is not obliged to raise them to a higher standard for the employee's benefit. The employee, as it is said, assumes the risk of the condition of the premises, except as to defects which such an examination would fail to reveal. *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572. *Rooney* v. *Sewall & Day Cordage Co.* 161 Mass. 153, 159. *McCafferty* v. *Lewando's French Dyeing & Cleansing Co.* 194 Mass. 412. *Murray* v. *Nantasket Beach Steamboat Co.* 248 Mass. 587, 589. *Cronan* v. *Armitage*, 285 Mass. 520, 526. The same rules apply whether the person invited is an ordinary employee, an independent contractor (as the plaintiff here seems to have been), or an employee of an independent contractor. *Pilling* v. *Hall*, 251 Mass. 425, 427. *Favereau* v. *Gabele*, 262 Mass. 118. *Brogna* v. *Capodilupo*, 279 Mass. 586, 590. *Engel* v. *Boston Ice Co.* 295 Mass. 428, 432.

So the principal question at the trial was whether such a hole as is above described, which we must now assume existed, would have been open and obvious to a reasonably prudent person "making such examination as he might be expected to make if he wished to ascertain the nature and perils of the prospective service." *Crimmins* v. *Booth*, 202 Mass. 17, 23. It is clear from the plaintiff's own testimony

that she could see the hole plainly enough after her attention was called to it, although she also testified that she had no occasion to look on the floor. On cross-examination she even answered "Yes" to the question "It [the hole] was perfectly apparent to anybody who looked down on the floor, wasn't it?" Notwithstanding all this we think that the issue was for the jury. Such a hole in the concrete floor of a room is an unusual thing. It is presumably due to some defect or want of repair. It is therefore an abnormal condition not to be anticipated by a visitor. The jury might say that a prospective employee could scarcely be expected to examine a floor in shadow in a dimly lighted room with minute care for possible small holes. *Morley* v. *Union Cotton Manuf. Co.* 210 Mass. 288. *Young* v. *Snell,* 200 Mass. 242, 246. Compare *Whalen* v. *Whitcomb,* 178 Mass. 33. Then, too, having found upon adequate evidence that there was in fact a hole, the jury could give some weight to testimony from employees of the defendant to the effect that they observed no hole, even though one of them also testified that there was no hole. *Marquandt* v. *Boston Young Women's Christian Association,* 282 Mass. 28, 31.

No issue other than that of assumption of risk has been argued, or could have been argued with any plausibility.

In accordance with the terms of the report the verdict for the defendant entered by the judge by "leave reserved" is set aside, and the verdict rendered by the jury is to stand, and judgment is to be entered upon it, unless it shall be set aside upon the defendant's pending motion for a new trial.

*So ordered.*