WILLIAM T. CHAMBERS *vs.* ANNIE J. DURLING.

Middlesex. May 8, 1940. — June 25, 1940.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Landlord and Tenant,* Landlord's liability to tenant or his family or his invitee, Common piazza.

Evidence warranted a finding of liability of a landlord of a two-family house to a tenant for injuries sustained in a fall when the railing of an open piazza used in common, apparently in good condition at the time of the letting, gave way about a month later, at which time it was found that the wood was rotten and the nails rusty.

TORT. Writ in the Superior Court dated July 8, 1936.

At the trial before *Dowd,* J., there was a verdict for the plaintiff in the sum of $3,500, of which he remitted $1,000. The defendant alleged exceptions.

*C. J. Muldoon,* (*A. C. Sheehy* with him,) for the defendant.

*H. F. Tracy,* (*A. G. Geishecker & F. D. Branca* with him,) for the plaintiff.

Cox, J. The jury returned a verdict for the plaintiff, a part of which was remitted. The denial of the defendant's motion for a directed verdict presents the only exception. On June 20, 1935, the plaintiff rented a tenement on the first floor of a two-family house, and his occupancy began on June 28. The defendant lived on the second floor, and it was agreed that she was the owner of the premises and in control of the rear piazza, where the plaintiff was injured. This piazza, used in common by the plaintiff and the defendant, was ten or twelve feet in length, and at its rear, nailed to the piazza posts, there was a wooden railing consisting of two stringers, with uprights connecting them. This railing gave way on August 2, 1935, "allowing" the plaintiff to fall to the ground, a distance of about five feet.

The jury could have found that the railing fell to the ground. Examination disclosed that it was "all like rotted where it came from the porch"; that the nails were rusty and the wood was rotted at both ends around the nail holes and torn away; and that the ends were rotted where it was nailed to the post and the wood was split at both ends. There was evidence that during the tenancy rain beat in all over the porch and upon the railings; that it was possible for rain to seep through joints "of that type" in the railing, with a tendency to rust the nails; that with the rusting there would be a deterioration of the wood; and that this is a process that continues "on and on."

When the tenement was rented, the back porch and sections of the railing and posts "looked all right . . . and . . . appeared perfectly all right. The paint was apparently in fairly good condition." The plaintiff had put his hand on the railing and, he testified, "You could have seen by examining it closely but not by looking at it," if there was anything wrong with the railing. The house was nine years old at the time of the injury and had been painted twice. The railings were a part of the original construction, and, as far as the defendant knew, no repairs had ever been made on them. After the injury, the defendant said: "If Pa had fixed the rail this wouldn't have happened. . . . If Pa had taken care of the fence like he had been told it would

have been all right," and "If Pa had taken care of the fence it would not have fallen." At the time of the accident, the defendant "kept repeating, 'If that had been fixed, Pa, it wouldn't have happened,' and 'I kept telling you to have that repaired.'"

She testified that she did not know exactly when last before the accident she had examined the railing; that she looked over the tenement from time to time; that the house was renovated "from the top to the bottom" before the plaintiff moved in; and that nothing was done to the railing, but that the apartment was "put in perfect shape." She testified further that she had no knowledge that the condition of the railing was other than good and sound.

"The plaintiff must recover, if at all, on the familiar principle that, in the absence, as here, of express agreement, a landlord owes a duty — breach of which would constitute negligence — to a tenant, and to persons using the premises in his right, to exercise reasonable care to keep the part of the premises remaining in the control of the landlord in the condition with respect to safety in which they were, or to a person of ordinary observation would appear to be, at the time of the letting." *Silver* v. *Cushner,* 300 Mass. 583, 584–585. In *Andrews* v. *Williamson,* 193 Mass. 92, it was said, at page 94, that the landlord's duty in respect to a common passageway owned and controlled by him is that of due care to keep it in such condition "as it was in, or purported to be in, at the time of the letting. But he is not bound to change the mode of construction. . . . The phrase 'in such condition as it was in, or purported to be in, at the time of the letting' means such condition as it would appear to be to a person of ordinary observation, and has reference to the obvious condition of things existing at the time of the letting. In a word, the landlord is not obliged to change the visible form and mode of construction in order to make the place safe, nor is he bound to remove obvious sources of danger. As to these the tenant takes the risk. Stated in another way, the general duty is upon the landlord to use reasonable care to keep the stairway safe for his tenants, with the proviso that the tenant impliedly agrees that he will take the

arrangement and mode of construction as they manifestly are, and will not call for any change to relieve from obvious dangers. Whatever may be the rule elsewhere, and notwithstanding some dicta in our reports seemingly to the contrary, such, we think, must be regarded as the law established by the decisions of this Commonwealth." In that case, the trial judge declined to rule, as requested by the defendant, that in order to recover the plaintiff must prove that the steps, one of which broke causing his injuries, had become defective since the tenement was let to the tenant, and that the defendant was not liable for an original defect in the step. It was held, at page 95, that the fair construction of the judge's charge to the jury was that "if the defect of which the plaintiffs complain was obvious at the time of the letting, then the defendant was not liable; but that if the steps appeared strong and safe at the time of the letting then the defendant was bound to use due care to keep them in the condition in which they thus appeared to be. As thus construed the charge was apt and correct."

We are of opinion that the explanation of the phrase "in such condition as it was in, or purported to be in, at the time of the letting," and the decision that, if the steps appeared strong and safe at the time of the letting, the defendant was bound to use due care to keep them in the condition in which they thus appeared to be, are in accord with the definition above quoted from the *Silver* case. *Flanagan* v. *Welch*, 220 Mass. 186, 191. *Loudon* v. *Beaulieu*, 277 Mass. 33, 35. *Cushing* v. *Jolles*, 292 Mass. 72, 76. *Garland* v. *Stetson*, 292 Mass. 95, 99–100. *Barre* v. *Epstein*, 299 Mass. 577, 578. *Dello Russo* v. *Rizzo*, 302 Mass. 177. The duty of the landlord to maintain common passageways in as safe condition as they appeared to be in at the time of the letting is not an absolute one. On the contrary, the duty is to use reasonable care to keep them in such condition. *Berg* v. *Elder*, 290 Mass. 540, 542. This is not a case where a railing was obviously defective at the time of a letting, so that a plaintiff, in order to recover, must prove that another defect which caused his injury arose after the beginning of

the tenancy, *Griffin* v. *Rudnick*, 298 Mass. 82, 84, and that there had been a change in the condition of the railing between that time and the time of his injury. *Murray* v. *Lincoln*, 277 Mass. 557, 559. *Sullivan* v. *F. W. Woolworth Co.* 305 Mass. 378. Nor is it a case where there is no evidence as to the appearance of the railing at the time of the letting. See *Wynn* v. *Sullivan*, 294 Mass. 562, 565.

We are of opinion that the jury could have found that the defendant was negligent. There was evidence of the effect of rain on the joints of such a railing, and it was for the jury to say, upon a consideration of the statements that could have been found to have been made by the defendant, whether she was remiss in her duty to exercise reasonable care to maintain the railing in as safe condition as it appeared to be to a person of ordinary observation at the time of the letting. The case is distinguishable from *Goldsmith* v. *Ricles*, 272 Mass. 391; *Loudon* v. *Beaulieu*, 277 Mass. 33, 35; *Kelley* v. *First National Bank of Boston*, 281 Mass. 169, 172; *Berg* v. *Elder*, 290 Mass. 540; *Barre* v. *Epstein*, 299 Mass. 577; *Dello Russo* v. *Rizzo*, 302 Mass. 177, 178. The defendant does not contend that the plaintiff was contributorily negligent.

*Exceptions overruled.*