JULIETTE ROUILLARD *vs.* CANADIAN KLONDIKE CLUB, INC.

Essex.   February 10, 1944. — April 26, 1944.

Present: FIELD, C.J., LUMMUS, DOLAN, & RONAN, JJ.

*Negligence,* Invited person, Amusement park, One owning or controlling
real estate, Licensee.

A club, which for a day had the use and possession of picnic grounds with
control of amusement equipment thereon, had the duty to use due care
to keep the equipment in reasonably safe condition for such use as
might ordinarily be expected to be made of it by one who had paid
the club for admission to the grounds and use of the equipment, or to
warn him of dangers in its use of which he would not be expected to
know.

A finding of negligence of a club in control for a day of picnic grounds
and swings thereon toward the plaintiff, who was on the grounds by
a paid admittance and was injured while using a swing, was warranted
on evidence that for more than two hours before the plaintiff's injury
a cross beam from which the swing was suspended had become sepa-
rated from the top of an upright post supporting it and was held only
by a bent bolt, so that one sitting on the swing would cause it to sag
substantially, and that the plaintiff was injured by the cross beam
coming down.

On evidence that a woman was admitted to picnic grounds upon one of
several tickets of admission sold to her father by a club temporarily
in control of the grounds, further evidence merely that a printed cir-
cular stated that the tickets were nontransferable did not require a
finding that the woman was merely a licensee and not an invitee of
the club.

TORT.   Writ in the Superior Court dated March 3, 1942.
The action was tried before *Forte,* J.

*S. H. Donnell,* for the defendant.

*R. L. Sisk,* (*D. S. Miller* with him,) for the plaintiff.

RONAN, J.   The defendant, a social club, hired of one
LeBel the use of his picnic grounds for Sunday, August 25,
1940, from 9:30 A.M. to 6:30 P.M.   The grounds had a dance
hall, a ball park, a running track, an outside fireplace or grill
for cooking food, and a set of six swings.   Three upright
posts, about eight or nine feet apart, supported a cross beam
which was three to five inches thick and which was bolted

into the three posts.  Six swings with wooden seats and steel or wire cables were attached to this cross beam.  The plaintiff, who had received a ticket from her father, attended the picnic or outing.  While she was using one of these swings, the cross beam came down and she was severely injured.  The jury returned a verdict for her.  The exceptions of the defendant are to the denial of its motion for a directed verdict, to the refusal to grant its requests for rulings, and to portions of the charge to the jury.

The principal contention of the defendant is that it was a licensee of the picnic grounds and that, while it had a right to use the grounds for the purpose of conducting a picnic or outing, the premises and the equipment remained in the control of the owner of the land.  The plaintiff was not a party to any contract of letting between the owner of the grove and the club and so far as appears had no knowledge of its terms.  If, as she contends, she was entitled by virtue of an admission fee paid to the club to enter the grove and to use the equipment which was there, then she was not a gratuitous licensee but a business visitor of the club and the latter was under an obligation to keep the premises reasonably safe for the use that she, as one attending the picnic, would ordinarily be expected to make thereof and to warn her of any dangers that might arise from the contemplated use and of which she would not be expected to have knowledge.  *Lanstein* v. *Acme White Lead & Color Works*, 285 Mass. 328.  *Kelley* v. *Goldberg*, 288 Mass. 79.  *Palmer* v. *Boston Penny Savings Bank*, 301 Mass. 540.  The liability of one using land for injuries caused to another whom he has invited to come upon the land for the purpose of transacting business with him does not depend upon the title that he may or may not have in the land but depends upon the obligation that the law imposes upon him on account of the invitation. If the defendant was itself a licensee that is immaterial.  One having the privilege of selling candy in a department store under a contract with the proprietor and using a show case supplied by the latter, who has agreed to keep it in repair, owes a duty to those whom he has invited to trade with him to use due care to see that they are not injured by the de-

fective condition of the show case. *Kelley* v. *W. D. Quimby & Co. Inc.* 227 Mass. 93, 95. *Frear* v. *Manchester Traction, Light & Power Co.* 83 N. H. 64, 69. *Collins* v. *Hazel Lumber Co.* 54 Wash. 524, 529. *Beaulac* v. *Robie,* 92 Vt. 27, 32. 45 C. J. 882.

The jury had before them the testimony of the treasurer of the club that the club paid $40 for which it had the use of the grounds and equipment for the day. Indeed, it was undisputed that the owner had given the club the use of the grounds for the purpose of conducting a picnic and that only those who bought a ticket from the club were to be admitted. The jury were instructed that if the club was not in possession of the grounds and had not acquired the right "to sell the use of these swings," then the club was not liable, but that if the club for a consideration gave the plaintiff the privilege of using the swings, then it was bound to exercise care to see that the swings were reasonably safe for such use as might ordinarily be made of them. The jury must have understood that the club was not to be held responsible unless it had possession of the grounds and equipment and that this necessarily included control over the swings. The club had hired the grounds for only a day and it did not have as full an opportunity to inspect and to remedy such defects as might be found as it would have had if its occupancy was for a longer period. *Oxford* v. *Leathe,* 165 Mass. 254, 255. Yet there was evidence that the end of the cross beam had separated from the top of one of the posts and was held in position by a bolt which had been bent so that a person sitting on the swing nearest to this post would cause the swing to sag to such an extent as to permit the seat of the swing to rest upon the ground, and that this condition had existed for more than two hours before the accident. Four or five hundred persons attended the picnic and it could be anticipated that at least some, if not many, would use these swings. The issue of the defendant's negligence was properly left to the jury. *Thompson* v. *Lowell, Lawrence & Haverhill Street Railway,* 170 Mass. 577. *Blanchette* v. *Union Street Railway,* 248 Mass. 407. *Wilson* v. *Norumbega Park Co.* 275 Mass. 422. Am. Law Inst. Restatement: Torts,

§ 415. This conclusion is in accord with the great weight of authority that the operator of an amusement park is bound to exercise due care to keep the premises, contrivances and devices, which are to be used by those whom he has invited for his own personal gain to use and enjoy them, in a reasonably safe condition for the contemplated use. *Miller* v. *Johnson*, 184 Ark. 1071. *Moffitt* v. *Ford Motor Co.* 135 Cal. App. 7. *Adams* v. *Schneider*, 71 Ind. App. 249. *Welsh* v. *Jefferson County Agricultural Society*, 121 Neb. 166. *Frear* v. *Manchester Traction, Light & Power Co.* 83 N. H. 64. *Reinzi* v. *Tilyou*, 252 N. Y. 97. *Eide* v. *Skerbeck*, 242 Wis. 474. Am. Law Inst. Restatement: Torts, § 415. Note, 145 Am. L. R. 962.

There was evidence that a member of the club could for $1.50 purchase a book of chances to win a cash prize and that upon receipt by the club of the $1.50 he would get a string tag admitting him to the grounds or he could pay $1.25 for this tag. Nonmembers could secure admission only by the purchase of a book of chances. The defendant's answer did not set up any illegality. There was also a printed circular which stated that the tickets were nontransferable. The plaintiff's father, a nonmember of the club, bought four tickets for himself and his family. The defendant contends that, the plaintiff's ticket being nontransferable, she had no rights in the picnic grounds other than those of a gratuitous licensee. There is nothing in this contention. If the club had the right to revoke the ticket, it never exercised that right. There was no evidence that the plaintiff knew of any restrictions on the right of a ticket holder. Neither was there any evidence that anything whatever was printed upon the admission tag. The plaintiff was not bound by any restrictions unless they were brought to her notice and in the absence of such notice she could reasonably assume that she had all the rights of a business visitor. *Kushner* v. *McGinnis*, 289 Mass. 326. *Brennan* v. *Ocean View Amusement Co.* 289 Mass. 587. *O'Brien* v. *Freeman*, 299 Mass. 20. *Sandler* v. *Commonwealth Station Co.* 307 Mass. 470. *Adams* v. *George Lawley & Son Corp.* 314 Mass. 87. Furthermore, the sale of four tickets to the plaintiff's father might well

cause the jury to believe that the tickets were not nontransferable or that such a restriction was not enforced by the club. It could hardly be thought that one person would buy four tickets for his own personal use unless he was possibly more concerned with winning a cash prize than with securing an admission tag to the grounds. We need not decide, even if the restrictions against the transfer of a ticket were valid, whether the jury would be precluded from finding that the plaintiff's father in buying the ticket for her was acting as her agent or that she was an undisclosed principal so that in either event she became a purchaser of the ticket from the club. *Groce* v. *First National Stores, Inc.* 268 Mass. 210. *Cleary* v. *First National Stores, Inc.* 291 Mass. 172. *Timmins* v. *F. N. Joslin Co.* 303 Mass. 540.

What has been said demonstrates that there is no error in any of the matters respecting which the defendant saved exceptions.

*Exceptions overruled.*