EDWARD BENJAMIN *vs.* THE O'CONNELL & LEE MFG. CO.

Middlesex. October 5, 1956. — November 9, 1956.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & CUTTER, JJ.

*Negligence*, One owning or controlling real estate, Railing. *Evidence*, Relevancy and materiality.

In an action against the proprietor of premises by a business invitee injured thereon when, while he was drawing a light piece of wooden molding over a removable section of the railing of a platform, that section fell out, causing him to fall to the ground, evidence warranted findings that the temporary use for a considerable time of a wooden cleat nailed to a post to hold the section of railing in place instead of screwed in metal plates used elsewhere was improper and constituted a defect and that the defendant had failed in his duty to the plaintiff to use due care to keep the railing reasonably safe for proper use of it by the plaintiff or to warn the plaintiff of a danger which was not obvious and of which the defendant should have known. [649–651]

Testimony that the proprietor of premises gave no information about the condition of a certain platform railing to a business invitee using the platform was admissible in an action by the invitee against the proprietor wherein there was evidence warranting a finding that the plaintiff was entitled to warning by the defendant of a defect in the railing which caused the plaintiff to fall to the ground and be injured. [651]

TORT. Writ in the Superior Court dated July 18, 1951.

The action was tried before *Goldberg, J.*

*David H. Fulton,* (*Robert Fulton* with him,) for the defendant.

*David W. Kelley,* for the plaintiff.

CUTTER, J. The plaintiff seeks to recover for injuries alleged to have been caused by the negligence of the defendant, a corporation operating a wood working mill. The circumstances admittedly would warrant a finding that the plaintiff was upon the defendant's premises as a business invitee. Exceptions were claimed to the denial of the defendant's motion for a directed verdict, as well as to the admission of certain evidence mentioned below. There was a verdict for the plaintiff. The case is here on the defendant's bill of exceptions.

The plaintiff, an employee of Weathermaster Window Sales Co., Inc. (hereinafter called Weathermaster), went to the defendant's premises to pick up certain lumber and materials ordered by Weathermaster. The particular order sought was not ready. Another larger order was ready, but Weathermaster was not yet prepared to remove it, although it was in the defendant's way. The defendant arranged with Weathermaster that the larger order would be stored temporarily by the plaintiff in vacant space in a shed on the defendant's premises.

The plaintiff and one Corbin were directed to store the lumber in the upper story of a shed pointed out to them by an employee of the defendant. The shed, built twenty-five years before the accident, was a two story building, wholly used for lumber storage. Outside the second story there was a platform about fourteen to twenty feet above the ground and about four feet wide. Along the outside of the platform was a wooden railing, about three feet high, consisting of upright 4″ x 4″ wooden posts about ten feet apart. Wooden rails of the same size, removable a section at a time and not fastened to the posts, ran between the posts with each section of the railing ending at the middle of the top of a post and resting upon it. Two metal plates on the

side of, and extending above, the top of each post (with one exception later noted) held the railing in place. These plates were fastened to the posts by screws. In loading lumber in the compartment on the second floor, designated to the plaintiff for the storage of Weathermaster's order, it was necessary to pass the lumber up by hand to the platform.

The material to be stored was described as "light stuff" and weighed three quarters of a pound per linear foot. It was inflexible wooden molding in strips (about one and a half inches thick and two and a half inches wide) running sixteen to twenty feet long, and was awkward to manage. The plaintiff and Corbin moved the molding on a cart to a point under the platform and Corbin, on the ground, started to pass a piece of molding twenty feet long to the plaintiff on the balcony. The latter seized it in both hands and started to draw it "like the fellow with a bow across his fiddle" over the rail, intending to place it in the shed in a pigeon hole about the height of his own shoulder. When about five feet of the molding had been drawn across the rail, leaving fifteen feet in the air, the rail fell out, the plaintiff lost his balance and fell to the ground and was injured. As he fell, he saw a wooden "cleat" about four inches wide by twelve inches long and one inch thick falling ahead of him. After he hit the ground, the plaintiff observed that the cleat, which he defined as a "piece of board temporarily nailed on to hold a structure or staging together," had approximately six nails each rusted out to a point. The rusted nail points extended beyond the face of the cleat only slightly and just came through the wood. As the plaintiff looked up at the point where he had been, he saw a weather mark about nine or ten inches long on the upper end of a post twenty-two or twenty-three feet above him, at a point where the railing was not in place. The weather mark on the post looked "suitable for the piece of wood that came off of it." The plaintiff testified to considerable experience in handling lumber in buildings of the type of the shed, and described the rail as "originally built to sustain a good deal more" than the approximately fifteen pounds weight of the strip of molding.

The shed had been used for the storage of lumber fairly frequently prior to 1932, but not very much after that. Work had been done to make repairs to railings when they had been injured by dropping lumber on them. The defendant's president, who was also, on the day of the accident, the working foreman of the defendant, had no occasion to inspect the rail and stated that the plates and screws in them were never replaced so far as he knew. The defendant's employee charged with repair work admitted that he had not inspected the railing prior to the accident. There was evidence that where nails are exposed to weather over a period of time, the rust starts to scale on the outside, diminishing the size of the nails to a point, so that they break, and that the use of unbolted cleats was not a safe construction on a structure of the type here involved (see *Chambers* v. *Durling*, 306 Mass. 327, 328).

The duty owed by the defendant to a business invitee was to use due care to keep its premises in a reasonably safe condition for use according to the invitation or to warn of dangers not obvious to the ordinary person and of which he would not be expected to know, but which were known or should have been known to the defendant. *Fulton* v. *Edison Electric Illuminating Co. of Boston*, 303 Mass. 258, 262–263. *Adams* v. *George Lawley & Son Corp.* 314 Mass. 87, 89–90. *LeBlanc* v. *Atlantic Building & Supply Co. Inc.* 323 Mass. 702, 705. *Smith* v. *August A. Busch Co. of Massachusetts, Inc.* 329 Mass. 615, 620. The plaintiff was obliged to use his faculties for his own protection and to guard himself from obvious hazards. *Barrett* v. *Builders' Patent Scaffolding Co. Inc.* 311 Mass. 41, 44–46. *Darcy* v. *Lord & Burnham Co.* 320 Mass. 371, 374–375.

Under the circumstances here revealed, the plaintiff, at the invitation of the defendant's employees, was entitled to use the equipment on the defendant's premises in any manner which could naturally have been anticipated and which was reasonable, and consistent with the character and purpose of the equipment. See *Lamattina* v. *Blue Hog Breeding Co. Inc.* 298 Mass. 446, 447 (platform attached to a barn

where pigs were being sold); *Rouillard* v. *Canadian Klondike Club, Inc.* 316 Mass. 11, 12–13 (swing on picnic ground); Restatement: Torts, § 343, comment f. Compare *Sullivan* v. *New Bedford Gas & Edison Light Co.* 190 Mass. 288, 292 (employee's assumption of risk of hoisting machinery in fact inefficient but not out of repair). Of course, there is no obligation to maintain premises or their equipment in a safe condition for uses for which they are not reasonably intended or for which their use is not reasonably predictable. *Simoneau* v. *Rice & Hutchins,* 202 Mass. 82, 84 (light bar across elevator opening). *Cerricola* v. *Darena,* 266 Mass. 267, 269 (skylight). *Chelefou* v. *Springfield Institution for Savings,* 297 Mass. 236, 241 (window screen). It cannot be said, as a matter of law, that drawing a light molding across a railing built of 4″ x 4″ timbers was an unreasonable use of the rail, even though the horizontal rail was removable and would have been removed if it had been necessary to store heavier material in the shed. From testimony summarized in the bill of exceptions, the jury could have believed that there was a causal connection between the plaintiff's fall and the displacement of the railing; that the railing supports had not been inspected by the defendant for some time; that a nailed wooden cleat, rather than a screwed-in metal plate, had been improperly used for an excessive period to support the railing which collapsed; that this was a temporary repair which had been there for a considerable time; that the plaintiff's method of lifting the molding was proper; and that the defect was not obvious (*Keough* v. *E. M. Loew's, Inc.* 303 Mass. 364, 366) in view of the position of the cleat on the side of the post away from the shed (although it possibly could have been discovered on a more thorough inspection by the defendant). See *Wood* v. *National Theatre Co.* 311 Mass. 550, and cases cited.

If the jury believed the evidence which has been outlined, it was sufficient to warrant them in concluding that the plaintiff, as an employee of a customer of the defendant, and thus under the circumstances a business invitee (see *LeBlanc* v. *Atlantic Building & Supply Co. Inc.* 323

Mass. 702, 703–704) was injured because of faulty mainte-
nance of the defendant's premises, that the defect was not
obvious, that it would not have been discovered by a reason-
able inspection of the premises by the plaintiff, and that it
had existed for a period of time sufficient to charge the de-
fendant with knowledge of the defect. The case was prop-
erly submitted to the jury. *Gray* v. *Boston, Revere Beach &
Lynn Railroad,* 261 Mass. 479, 482–483. *Lamattina* v. *Blue
Hog Breeding Co. Inc.* 298 Mass. 446. *Bell* v. *Dorchester
Theatre Co.* 314 Mass. 536, 538. *Matthews* v. *L & L Enter-
prises, Inc.* 314 Mass. 538, 539. See *Fulton* v. *Edison Elec-
tric Illuminating Co. of Boston,* 303 Mass. 258, 262–264.
Compare *Brogna* v. *Capodilupo,* 279 Mass. 586, 593; *Mucha*
v. *Northeastern Crushed Stone Co. Inc.* 307 Mass. 592, 595–
597; *Williams* v. *United Men's Shop, Inc.* 317 Mass. 319,
321; *Gauld* v. *John Hancock Mutual Life Ins. Co.* 329 Mass.
724, 726–728.

On the evidence, the jury could have found that a latent
defect in the defendant's premises had been created, of
which the defendant should have known, and that the
plaintiff was entitled to warning of it. *Gray* v. *Boston, Re-
vere Beach & Lynn Railroad,* 261 Mass. 479, 482–483. *Kel-
ley* v. *Goldberg,* 288 Mass. 79, 82–83. See *Gallo* v. *Leahy,* 297
Mass. 265, 268–269. Accordingly, there was no error in
admitting the testimony of the plaintiff that he had re-
ceived no information from the defendant about the condi-
tion of the railing.              *Exceptions overruled.*