GERARD V. HANNON *vs.* HAYES-BICKFORD LUNCH SYSTEM, INC.

Suffolk.    April 2, 1957. — July 3, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence*, Toward employee of independent contractor, One owning or controlling real estate, Duty to warn, Stairway. *Evidence*, Evidence binding a party.

The plaintiff in an action for personal injuries sustained when a defective step of a stairway broke and caused him to fall was bound by his testimony as to his own knowledge of the condition of the step before his fall. [273]

In an action by an employee of an independent electrical contractor working on premises undergoing extensive renovation against the owner of the premises for personal injuries sustained by the plaintiff when, as he was descending a basement stairway, the tread of a defective step broke apart along a crack across it and caused him to fall, a finding that the defendant was liable on the ground of failure to warn the plaintiff of a hidden defect was not warranted where there was testimony by the plaintiff himself, binding on him, that on numerous occasions when he went over the stairway before the accident he had observed the crack in the tread and that the tread "gave under him" and was "springy" when he "put any weight on it," even if his testimony did not mention a "shredded and rotted" condition of the tread and other evidence would support a finding of the existence of such a condition hidden yet known to the defendant and contributing to the breaking of the tread. [273–274] COUNIHAN, J., dissenting.

TORT. Writ in the Superior Court dated August 13, 1951.

The action was tried before *Pecce*, J.

In this court the case was argued before *Wilkins*, C.J., *Ronan*, *Spalding*, *Counihan*, & *Cutter*, JJ., and afterwards was submitted on briefs to all the Justices.

*Thomas A. Brett*, for the plaintiff.

*Thomas H. Mahony*, (*George T. Padula* with him,) for the defendant.

CUTTER, J.  This is an action of tort to recover for personal injuries alleged to have been caused by the negligence of the defendant "in inviting the plaintiff to use [a] stairway that was defective, dangerous and unsafe and in failing to warn invitees of the dangerous condition of said stairs." [1] The answer contained a general denial and pleaded the defences of contributory negligence and assumption of risk (and another defence which need not be considered).

Following a verdict for the plaintiff, the trial judge, pursuant to leave reserved, entered a verdict for the defendant and reported the case to this court upon the stipulation that if his "ruling on the motion for the entry of judgment under leave reserved is incorrect, judgment is to be entered for the plaintiff on the verdict; otherwise, judgment is to be entered for the defendant."

---

[1] The plaintiff specified that the "stairway was dangerous and unsafe because the wood of at least one stair was rotted to such an extent that it split in two while the plaintiff was descending the said stairs."

In considering the evidence summarized below, we have applied the principles that the issue is "for the jury, if . . . in the evidence . . . any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff" and that "the plaintiff is entitled to the benefit of all the evidence most favorable to him, even though his own testimony may have been less favorable." *Kelly* v. *Railway Express Agency, Inc.* 315 Mass. 301, 302, and cases cited. See *Reynolds* v. *Sullivan*, 330 Mass. 549, 552–553; *Barton* v. *New York, New Haven & Hartford Railroad*, 332 Mass. 345, 350.

The defendant took over from another owner a restaurant in Cleveland Circle, Boston, and moved in on August 28, 1949. It continued to employ the same manager and other personnel, but promptly made extensive repairs, including electrical wiring, carpentry, and painting, and "remodeling the first floor and basement."

On September 1, 2, and 6, 1949, the plaintiff was employed as an electrician by Skillings Electric Company, which, as an independent contractor, was doing electrical work at the defendant's restaurant. The plaintiff testified that his "work involved passing over a wooden staircase from the first floor to the basement . . . and on September 1 and 2 . . . he passed over it some ten to twelve times per day." On September 6, he went over the "staircase at least twice before the accident happened . . . . [U]pon every such occasion, he observed that the treads generally were well worn and that the tread of one step, about half way down in the staircase, was cracked and gave under him . . . that the crack along the central line of the tread was pretty close to one fourth inch wide and ran from one side of the tread to the other . . . that every time he put any weight on it, it was springy." On "the last time he passed over the staircase, going down, he slipped on this step; . . . it broke under him and he fell the rest of the way to the bottom, receiving the injuries complained of." After "the fall . . . he looked at the steps and observed that this particular tread was split in two, one half was hanging down over the riser below

it . . . the edge of the remaining part of the tread where the crack had been was dirty, dark, black, discolored wood to about a half inch on each end, was crumbling, dirty and rotted away in the center."

One Manning, who became manager for the defendant in August, 1949, testified that he had observed that "there was a slight crack . . . for about two months before August 28 . . . that he noticed nothing else about the steps except that they were well worn . . . that you couldn't exactly notice the crack because it was very slight — so slight it was difficult to see it." He did not make to his superiors any report about the step.

One Smith, a fellow employee of the plaintiff, testified that on September 1, 2, and 6 he "passed over the stairs . . . several times; that he observed a broken tread which was loose . . . broken lengthwise the full length of the tread . . . that you could see the broken step from the kitchen above . . . that he would have difficulty seeing that break going down the stairs but no difficulty going up."

One Huntley, temporary manager for the defendant, testified "that on September 6 . . . he went up and down the stairs . . . once before the accident and observed that the stairs were well worn and . . . there was a broken step; . . . that all the steps were concave — worn — with the appearance of being rotten — shredded like, splintered . . . that there was no electric light fixture at the top or bottom of the staircase; that with the light from the kitchen behind him . . . he saw that the tread . . . was shredded and rotted."

One Hayes, the defendant's superintendent of restaurants, testified that "an order had (previously [that is, prior to September 6]) been given for their [the stairs] repair and replacement because they were worn; that he . . . two days before September 1 . . . walked on them many times, observing that they were worn . . . but they were not springy; that he did not recall one step with a break or crack in it . . . that the treads were one and one half inch planks . . . worn down in places about one half inch."

Other witnesses, who were employees of the defendant, did not see any cracked steps and noticed no condition of break or rot. Another witness testified that he saw the remaining portion of the step after the accident "and it looked as if it was dark and . . . in the form of rotting." There was no evidence of any warning to the plaintiff from the defendant.

The duty owed by the owner or occupier of premises to the employee of an independent contractor performing work on the premises is "the same duty . . . owed to one of its own employees," that is, "to disclose to the employee hidden defects of which the employer knows or of which in the exercise of reasonable care he should know. . . . Except in cases of hidden defects, the employer owes no duty to alter the condition of his premises to make them safe for the employee. . . . To recover, the plaintiff had the burden of proving not only that the injury was caused by the defendant's failure to warn of a hidden defect but that the defect was one of which the defendant knew or which it could have discovered by exercising reasonable care." *Williams* v. *United Men's Shop, Inc.* 317 Mass. 319, 320, and cases cited. *Flynn* v. *Garber*, 333 Mass. 663, 665. See *Murray* v. *Nantasket Beach Steamboat Co.* 248 Mass. 587, 589; *Pilling* v. *Hall*, 251 Mass. 425, 426–427; *Cavanaugh* v. *Crocker*, 335 Mass. 765; *Barry* v. *Stop & Shop, Inc.* 335 Mass. 767. Compare *Benjamin* v. *O'Connell & Lee Mfg. Co.* 334 Mass. 646, 650–651. Particularly, where a general renovation and widespread repairs were in progress,[1] and where the plaintiff was participating in one phase of them, he was bound to take the premises as he found them and the defendant was "under no obligation to alter their condition or to make them safe, nor . . . [was] he required to warn the servant [of an independent contractor] of dangers which are obvious or could be discovered by reasonable inspection." The plaintiff was bound to know

---

[1] There was here, of course, no undertaking by the plaintiff or his employer to repair the stairs and this is not a case where the defendant "owed no duty to the plaintiff with reference to risks and dangers incidental to the work which he had contracted to perform." Compare *Campbell* v. *Rockland Trust Co.* 311 Mass. 663, 666–667.

of those defects "which were open to view or could have. been seen if properly examined." *Favereau* v. *Gabele*, 262 Mass. 118, 119. See *Forgione* v. *Frankini Construction Co.* 308 Mass. 29, 31–32; *Collins* v. *Goodrich*, 324 Mass. 251, 253–254.

A majority of the court is of the opinion that there was no evidence that the plaintiff was injured by reason of the defendant's failure to warn him of a hidden defect. The evidence on which the plaintiff must rely to show the existence of any defect is that (already summarized) of the plaintiff himself, Manning, Smith, and Huntley. Their descriptions of the tread which broke naturally varied from one another slightly in minor respects, but the purport of each of these witnesses' testimony was that whatever condition he observed was plainly visible, except that Manning testified that the crack which he mentioned "was difficult to see." However, the plaintiff testified that he already had knowledge of the crack in the tread; that the tread "gave under him when he stepped on it"; and that "every time he put any weight on it, it was springy." Any person having knowledge of these facts, which the plaintiff said he knew, was charged with knowledge that the step was infirm and that its use involved risk of accident. The plaintiff's testimony about the extent of his own knowledge (as to which he is clearly the best witness) is binding upon him. See *Reynolds* v. *Sullivan*, 330 Mass. 549, 552–553; *Fraser* v. *Fraser*, 334 Mass. 4, 6.

Huntley, to be sure, testified that the tread had "the appearance of being rotten" and was "shredded and rotted," and the plaintiff did not expressly mention these conditions in his testimony. The evidence, however, shows that the tread broke along the crack, and even if the condition of rot contributed to this break, it was merely one aspect of the hazard shown by the crack and the springy tread, about which the plaintiff already knew.

We need not consider whether without distortion or undue fragmentation of Huntley's testimony (see *Kettleman* v. *Atkins*, 229 Mass. 89, 91–92; *Sturman* v. *Davis*, 321 Mass.

442, 444; *Woods* v. *DeMont,* 322 Mass. 233, 235) the jury could believe that he saw a condition of rot in one trip each way over the stairs and yet believe that the defect was hidden, for the plaintiff by his own testimony has shown that he knew as definitely that there was risk of injury from the use of the cracked step as if he had been warned to be careful in its use by Manning and Huntley. The plaintiff cannot assert that he is entitled to warning of a risk of injury of which he already knew, even if it be assumed that there is no room for conjecture whether the accident happened because the cracked step gave way rather than because the plaintiff slipped for an unknown cause. Compare *Woods* v. *DeMont,* 322 Mass. 233, 235; *Cleary* v. *St. George,* 335 Mass. 245, 249; *Winer* v. *Boston & Maine Railroad, post,* 757.

The action of the trial judge in entering a verdict under leave reserved was correct. In accordance with the terms of the report, judgment is to be entered for the defendant.

*So ordered.*


COUNIHAN, J. I am unable to agree with the opinion of the majority of the court. In general I am in accord with the facts as set forth in the opinion and I agree with the quotation in the opinion from *Kelly* v. *Railway Express Agency, Inc.* 315 Mass. 301, at page 302, and with the cases cited in the opinion. In fact I rely upon the *Kelly* case as the basis of my dissent.

For a statement of general principles of law applicable to the case at bar see *Williams* v. *United Men's Shop, Inc.* 317 Mass. 319, 320, cited in the opinion. It may be well to note that the duty of one to the employee of an independent contractor differs somewhat from that which one owes to a business invitee or that which a landlord owes a tenant.

I agree that in cases similar to the case at bar "There is no duty . . . to warn of obvious defects." *Gallo* v. *Leahy,* 297 Mass. 265, 269.

I also agree that the evidence in this case, outside of the testimony of Huntley, the acting manager, who was called by the plaintiff, affords no reasonable basis for a finding that

the defendant was guilty of a breach of duty in failing to warn the plaintiff. And it is true that Huntley testified that before the accident "all the steps were concave — worn — with the appearance of being rotten — shredded like, splintered" and later on that "the condition was open and visible to him . . . ." It is plain that this testimony was directly in conflict with the testimony given by the other employees of the defendant including its general superintendent and manager. Huntley was the acting manager of the defendant and it was his duty to inspect all of its premises and to give warning of hidden defects. He was not sure that he gave any warning to the superintendent who denied receiving any, but it is certain that he gave no warning to the plaintiff. In these circumstances the "jury may discredit that part of the testimony of one that tends to exonerate him from fault, and believe only that portion tending to show negligence on his part . . . . As already pointed out, it was for the jury to say what part, or parts, of the evidence would be accepted or rejected." *Lydon* v. *Boston Elevated Railway*, 309 Mass. 205, 207, 211. *Tyrrell* v. *Caruso*, 269 Mass. 379. *Clark* v. *C. E. Fay Co.* 281 Mass. 240, 242. The jury could therefore accept nothing more from Huntley's testimony than that he knew of the rotten condition of the stairs and reject his description as to how open and obvious this condition was. I am of opinion that because of this there was evidence from which the jury could conclude that the defendant was negligent in that it knew of this defective condition and failed to warn the plaintiff of it. See *Commonwealth* v. *Davis*, 284 Mass. 41, 51; *McGaffigan* v. *Kennedy*, 302 Mass. 12, 14; *Keough* v. *E. M. Loew's, Inc.* 303 Mass. 364, 366; *Wood* v. *National Theatre Co.* 311 Mass. 550, 552; *Benjamin* v. *O'Connell & Lee Mfg. Co.* 334 Mass. 646, 650–651; *Goldberg* v. *Norton Co.* 335 Mass. 605, 609; *Niland* v. *Cox, ante*, 169, 171.

I infer from the facts recited in the report that the plaintiff's injuries were caused not by the crack on the step but by the rotten condition of the step of which on the record only Huntley, the acting manager, knew.

It was said in one of the early cases, "They [the jury] are to weigh all the evidence, and while they may not pervert or distort it by rejecting integral parts of a statement, *they may accept or reject each distinct statement*" (emphasis supplied). *Hill* v. *West End Street Railway*, 158 Mass. 458, 460. In the case at bar there were two distinct statements by Huntley, one to the effect that all the steps were rotten and another that the condition was open and visible to him. The report is in narrative form and it is difficult to determine in just what sequence these different statements were made. Huntley was called as a witness by the plaintiff and it is at least inferable that the first statement was made on direct examination where it would be helpful to the plaintiff and that the second statement was made on cross-examination where it would be helpful to the defendant. I am of opinion that the jury could accept one of these statements and reject the other. If the jury believed that Huntley knew of the rotten condition of the step and disbelieved his statement that it was open and obvious, they could find a rotten condition not open and obvious. There was no other evidence that the defective condition was open and obvious from any source. They could find that Huntley owed the plaintiff a duty to warn him, and his failure to do so created liability upon the defendant.

The defendant argues that, because the premises were in process of alteration, repair and remodeling, there was no duty to maintain the staircase in question in its normal condition. But on the evidence it is clear that no part of the stairway was in the process of alteration or repair when the accident happened. The cases upon this point and other points relied upon by it have been carefully examined and are found to be inapplicable because they involve factual conditions different from those in the case at bar.

In my opinion it follows therefore that in accordance with the terms of the report judgment should be entered for the plaintiff on the verdict of the jury.