WILLIAM J. FINDLAY *vs.* RUBIN GLASS AND MIRROR
COMPANY.

Suffolk.    December 9, 1965. — February 3, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Negligence,* Toward employee of independent contractor, One owning or
    controlling real estate, Duty to warn. *Evidence,* Evidence binding a
    party.

In an action against the proprietor of a warehouse where heavy cases of
    glass were stacked, one of which, standing alone precariously on its edge
    without support, toppled over and struck and injured the plaintiff, an
    employee of an independent contractor, after he had been working some
    time in the warehouse, a finding that the defendant had a duty to warn
    the plaintiff respecting such case was not warranted, and recovery was
    precluded, in view of testimony by the plaintiff, binding on him, that he
    had observed such case at the outset of his work in the warehouse, that
    he could have examined it to determine whether it was safely secured
    but did not do so, and that he was aware that if he and a fellow work-
    man "were not careful they could tip over a case of glass."    [171–172]
The plaintiff in an action for personal injuries was bound by his own
    testimony as to his knowledge of conditions in the place where he was
    injured.    [172]

TORT.    Writ in the Superior Court dated May 2, 1960.
The action was tried before *Ponte, J.*
*James D. Casey (Donald Q. Bunker* with him) for the
defendant.
*Thomas A. Brett* for the plaintiff.

SPALDING, J.   In this action of tort the plaintiff had a
verdict.  The sole question arises out of the denial of the
defendant's motion for a directed verdict.[1]

The evidence most favorable to the plaintiff was as fol-
lows: The defendant operated a wholesale glass distrib-
uting business.  Its premises consisted of an office, and a
warehouse used for storage, cutting and shipping of glass.

---

[1] An auditor to whom the case was referred found for the defendant.  There-
after the case was tried to a jury on the auditor's report and other evidence.

Against the left hand wall of the warehouse, as one enters, there was a balcony or platform which was held up by four lally columns extending from the floor to the platform and thence to the ceiling. The platform was approximately twelve feet in width, fourteen feet in length and ten feet above the floor level; it extended from the front end of the warehouse toward the rear. On the floor, from a point beneath the end of the platform to the back wall, cases of glass were stowed very closely in three or four rows. From the platform to the rear wall, the first half of each row was stowed ''by each case being tilted . . . towards the balcony against one another and against supports.'' The rear half of the cases were stowed in ''similar manner being tilted in the opposite direction . . . one leaning against the other and against supports and against the rear wall.'' The tilted edges of the cases were also wedged. The height of these cases varied from four to thirteen feet, and they were about four feet in length and eight inches in width. The distance between the top of the cases nearest to the platform and the floor of the platform was about six feet. The procedure for stowing a second tier of cases was the same.

In the area running alongside these rows of cases and the platform was an open space or passageway which was used for the handling of them. Beyond this passageway toward the wall other cases were stowed. Over this passageway, which ran the length of the floor, was an overhead crane which moved on an ''I'' beam attached to the ceiling. To this crane ''chain falls'' were attached. There was also another ''I'' beam which extended from the rear wall to a point over the cases at the end of the platform. Both beams were used for handling cases of glass.

In May or June of 1959, the defendant entered into an oral contract with Chestnut Welding and Iron Company (Chestnut), the plaintiff's employer, to install an ''I'' beam along the ceiling over the area where the platform was located. This beam, and the hoist affixed to it, were to be used for moving cases of glass. Chestnut delivered to the defendant's premises the steel beam which was twenty-two feet in length and weighed 374 pounds.

On June 9, 1959, Chestnut sent the plaintiff and one Coffey to the defendant's premises for the purpose of raising the beam from the floor onto the platform where it would be in position for attachment to the ceiling. The plaintiff had been in Chestnut's employ for two or three months and had been doing "iron work" for about eight years. Coffey, who was in charge of this work, was "directly in control of the work performed by the plaintiff." No equipment for handling the beam was furnished to them by Chestnut, other than some rope and a few pieces of pipe or rollers. The defendant's warehouse foreman lent them some rollers and allowed them to use the traveling crane and chain hoist for raising the beam from the floor to the platform. After the beam was attached to the hoist and raised from the floor, the plaintiff and Coffey found it necessary to walk on top of the rows of cases that were standing on the floor. The plaintiff did this off and on for an hour and a half. Occasionally Coffey would jump from the platform to the top of the crates, a distance of about six feet.

The plaintiff testified that a single case of glass stood on its edge on top of the bottom tier of cases, without support, at a distance of fifteen feet from the back of the platform. This case was four feet high, five feet long, eight inches wide, and weighed about 1,000 pounds. The plaintiff first observed it upon arriving at the defendant's premises on the day of the accident. The defendant's warehouse foreman testified that a case of glass stacked in this manner would not stand safely. Although he might have done so, the plaintiff did not examine the case to determine whether it was safely secured. He knew that the cases contained glass which was not evenly packed, and that if he and Coffey were not careful they could upset one. After they had been struggling with the beam an hour and a half, and while he was within two feet of it, the single case suddenly toppled and struck the plaintiff.

The defendant's motion for a directed verdict ought to have been granted. The plaintiff's status at the time of

the accident was clearly that of an employee of an independent contractor. *McDermott's Case,* 283 Mass. 74, 76. *Wilson* v. *Conlin,* 338 Mass. 295, 296. Thus, in regard to the premises, the defendant's duty to the plaintiff was the same as that owed to its own employees, that is, to disclose the presence of any concealed defects of which it knew or should have known. *Williams* v. *United Men's Shop, Inc.* 317 Mass. 319, 320. *Hannon* v. *Hayes-Bickford Lunch Sys. Inc.* 336 Mass. 268, 272–273. *Wilson* v. *Conlin, supra.* As to defects which were obvious, however, or which ·could have been discovered by reasonable inspection, the defendant had no duty to warn the plaintiff, nor to alter the condition. *Favereau* v. *Gabele,* 262 Mass. 118, 119. *Hannon* v. *Hayes-Bickford Lunch Sys. Inc., supra,* 272–273.

The jury could have found that the defendant knew or should have known that the case which fell on the plaintiff was precariously placed. But the evidence did not warrant a finding that this condition was hidden or concealed from the plaintiff. That the case was standing alone without visible support, and that the plaintiff worked in the vicinity of it for an hour and a half, could, without more, justify this conclusion. *Favereau* v. *Gabele,* 262 Mass. 118. Compare *Keough* v. *E. M. Loew's, Inc.* 303 Mass. 364; *Barrett* v. *Builders' Patent Scaffolding Co. Inc.* 311 Mass. 41, 44–45; *Wilson* v. *Conlin, supra; West* v. *Molders Foundry Co. Inc.* 342 Mass. 8. Here, however, the plaintiff testified that he was aware of the case from the outset, that he could have examined it more closely but did not, and that he was generally aware of the possibility that "if he and . . . Coffey were not careful they could tip over a case of glass." Since this testimony concerns the extent of his own knowledge, the plaintiff is bound by it. *Hannon* v. *Hayes-Bickford Lunch Sys. Inc.* 336 Mass. 268, 273.

*Exceptions sustained.*
*Judgment for the defendant.*